Lonnie W. ODOM, Sr.,
Plaintiff-Appellant,

v.

UNITED MINE WORKERS OF AMERICA HEALTH AND RETIREMENT FUNDS, Defendant-Appellee.

No. 81–5364.

United States Court of Appeals,
Sixth Circuit.

Argued June 23, 1982.

Decided Sept. 1, 1982.

Sidney H. Hulette, Ruark & Hulette, Morganfield, Ky., for plaintiff-appellant.

Charles L. Lamar, Lovett, Lamar & Hutchinson, Owensboro, Ky., E. Calvin Golumbic, Phillips T. Kimball, UMWA Health

& Retirement Funds, William F. Hanrahan, Washington, D. C., for defendant-appellee.

Before KEITH and KRUPANSKY, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

PHILLIPS, Senior Circuit Judge.

This is an appeal from a summary judgment in favor of the defendant, UMWA Health & Retirement Funds. The trustees of the funds denied the application of appellant for disability pension benefits. The district judge granted summary judgment on the ground that the decision of the trustees was not arbitrary, capricious or unsupported by substantial evidence.

In his application for permanent disability benefits, filed in August 1978, appellant stated that he was totally disabled as a result of an accident while working in a coal mine in June 1976. The application was denied. After a hearing appellee's hearing officer sustained the denial of the claim. The hearing officer held that the on-the-job accident did not *cause* appellant's admitted total disability.

With his administrative remedies exhausted, appellant filed the present action in the Circuit Court of Union County, Kentucky, in March 1980. The action was removed to the United States District Court for the Western District of Kentucky, with jurisdiction asserted on the basis of diversity of citizenship.[1]

Both parties moved for summary judgment. The district judge granted the motion of the appellee and denied the motion of appellant. This appeal followed. We reverse and remand.

I

Appellant worked as a UMWA coal miner from 1955 until his accident. His most recent job was with the Peabody Coal Company.

The appellee consists of four separate trusts established under the National Bitu-

minous Coal Wage Agreement of 1974 to provide certain benefits to coal miners who worked in the mines on or after December 6, 1974.

Eligibility requirements for disability pension benefits are set forth in the UMWA 1974 Pension Plan. Article IIC of the Plan provides:

"A participant who: (a) has at least 10 years of signatory service prior to retirement, and (b) becomes totally disabled on or after the effective date as a result of a mine accident shall, upon his retirement . . . be eligible for a pension. A participant shall be considered to be totally disabled only if by reason of such accident he is subsequently determined to be eligible for Social Security Disability Insurance Benefits under Title II of the Social Security Act or its successor."

There is no dispute that appellant has satisfied all of the eligibility requirements for disability pension benefits except the requirement that he became "totally disabled . . . *as a result of a mine accident* . . . ." (emphasis added). The issue on this appeal is whether the decision of the appellee that the on-the-job accident of appellant did not *cause* his total disability was arbitrary, capricious or unsupported by substantial evidence.

In June 1976, appellant, while working on his job, slipped while pulling a pipe wrench. ·He fell from the platform on which he was working and landed on his back on a 6″ × 8″ beam below. Appellant apparently continued to work for the remainder of that day. He did not return to work until noon the following day. At that time he experienced hematuria (blood in the urine) and decided to go home.

He consulted his family physician, Dr. Wallace N. Bell, who decided to hospitalize appellant. Dr. Bell performed several tests and concluded that appellant had a urinary tract infection. Dr. Bell discharged appellant from the hospital after about eight days and referred him to Dr. Martin J. Bender, a urologist.

1. We note that the action could have been brought in federal court initially under § 502 of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1132.

In the report of his examination of appellant, Dr. Bender discussed appellant's symptoms and the accident. He also noted that: "In the last year, at least once every week or two, he has noticed some blood in the urine." Appellant submitted an affidavit in which he denied making such a statement. The doctor diagnosed appellant's condition as "advanced bilateral hydronephrosis." In appellant's case, this is a congenital condition in which the kidneys dilate or "balloon" because they do not drain properly. Dr. Bender noted that the conditions of which appellant was complaining at the time were caused by the accident, but was of the opinion that the overall kidney condition was pre-existing.

After a series of tests, Dr. Bender recommended corrective surgery for appellant's kidneys. He first performed surgery on appellant's right kidney which had been more seriously injured in the accident. Four months later, in April 1977, he performed surgery on the left kidney. Both operations were performed to correct appellant's congenital kidney condition, which was characterized as enlarged, poorly functioning kidneys.

Appellant filed for, and was awarded, Social Security total disability benefits in 1976. In 1978, the Social Security Administration determined that he continued to be disabled.

Appellant also filed for, and was awarded workers' compensation benefits by the Workers' Compensation Board of the Commonwealth of Kentucky. The award was made on October 1, 1978, and the appellant was found to be 100 per cent disabled. The Board found that appellant's disability was caused, at least in part, by his on-the-job accident. During the prosecution of the workers' compensation case, Dr. Bender's deposition was taken. In addition, Dr. William H. Klompus, a doctor to whom the Workers' Compensation Board referred the appellant, gave testimony by deposition.

Notwithstanding his success with the Federal and State agencies, appellant was not successful in asserting his claim for benefits from the appellee funds. Although the UMWA Field Service Representative originally recommended payment of the disability pension in a May 1979 memorandum, appellant's claim was denied later on the basis of the recommendation of Dr. David Abramson, a medical consultant of the funds. Appellant appealed that decision to a hearing officer of the appellee and submitted with his appeal the depositions of Drs. Bender and Klompus.

In Dr. Bender's deposition, he described generally the condition of appellant. He noted that appellant had loose distended kidneys which were not protected adequately by his ribs, a congenital condition which existed prior to appellant's accident. The doctor stated that if the accident had not occurred, appellant might not have discovered his condition, "[s]o in that sense it was fortuitous that Dr. Bell took the opportunity to X-ray his kidneys and found a problem that was extremely serious."

When asked whether the injury caused the disability by arousing appellant's pre-existing condition, Dr. Bender testified as follows:

29. Doctor, in your opinion, based on your tests and your examination, and your treatment and surgery, was the pre-existing condition that you mentioned, the congenital condition, was that, in your opinion, dormant and nondisabling prior to the trauma which Mr. Odom received to his back?

A. Definitely.

30. Now, in your opinion, did the traumatic injury which Mr. Odom described to you bring this dormant, pre-existing condition into what is known as disabling reality?

A. Yes.

31. Would the injury which he described to you be sufficient to bring this type of a condition into disabling reality? A blow across the flank or something like that?

A. Yes.

32. Now in your opinion, does Mr. Odom have a permanent whole-man disability as a result of the injury and the pre-existing condition?

A. Can you amplify on what you mean by whole man?

33. In other words, to his body as a whole. In your opinion, does he have a disability to the body as a whole as a result of the pre-existing condition, and as a result of the traumatic injury which he received?

A. I would say that he does because the kidneys are vital organs. And if you have damage to both kidneys of a moderate, far-advanced degree, which he definitely did, you are, in turn, affecting other—eventually other bodily functions. So I would say that it does effect the whole man.

34. What, in your opinion, is his disability as a result of this, Doctor?

A. You mean in percentage?

35. Yes, sir.

A. Well, having given this considerable thought, because I anticipated this question, I would say fifty percent.

36. What percent of this disability, in your opinion, is attributable to the dormant, nondisabling, pre-existing condition?

A. I would say at least forty percent.

37. And would you then say that ten percent is attributable to the trauma; is that correct?

A. Yes. That's a difficult figure to arrive at, quite frankly; but that would be the best I could do I would say.

Dr. Bender testified that a person with normal kidneys would not have sustained permanent kidney damage as a result of the accident, but because his oversized kidneys were unprotected, appellant sustained permanent damage. Dr. Bender testified that even after surgery, appellant's kidneys are dangerously vulnerable and that any work that he might undertake to perform would have to be safer than the work he had performed in the mines.

On cross-examination, Dr. Bender made the following statement upon which the district court and the appellee rely for concluding that the accident did not *cause* the appellant's disability:

38. Assume that this condition of hydronephrosis had been discovered without the injury. Would you have recommended and performed the same surgery?

A. Yes.

39. And subsequent to the surgery, with the recovery that he had, would you place the same restrictions on Mr. Odom's activities?

A. Yes.

The testimony and diagnosis of Dr. Klompus were similar to those of Dr. Bender. He, too, testified that a person with normal kidneys probably would not have sustained permanent injury from the fall, but that the accident was "a precipitating cause" of appellant's ultimate problems. He did not make any statements in which he qualified his opinion, although he could only guess as to the percentage of disability caused by the accident.

Prior to the final decision of appellee's Trustees, the medical director of appellee, Dr. William J. Bicknell, who had no previous connection with the file, reviewed appellant's case. He found the accident of appellant was "unrelated even to the discovery of the underlying renal disease." He found "no substantial causal link between accident and disability." Based on this and other evidence submitted, the appellee's Hearing Officer denied the claim of appellant for disability benefits. The Officer held that the appellant had not established "total disability due to a mine accident."

## II

■ We recognize that the scope of our review of a decision of the Trustees of the funds is limited. We must uphold the decision unless it is "arbitrary or capricious, made in bad faith, not supported by substantial evidence or contrary to law." *See, e.g., Hall v. Mullins*, 621 F.2d 253, 254 (6th Cir. 1980); *Miller v. Davis*, 507 F.2d 308 (6th Cir. 1974).

Part of our review under the foregoing standard is to determine whether appellee has followed its own established rules and regulations in assessing the merits of the

claim of appellant. Appellee does not deny that appellant has satisfied all of the eligibility requirements for a disability pension except the requirement that the disability was *caused* by the mining accident. Appellee's own "proximate cause principle" set forth in its "Health Services Card Processing for Disabled Mine Workers," provides:

If the mine accident aggravated a preexisting condition to the extent that the person became totally disabled, or if the mine accident occurred after a non-mine related injury and the two injuries combined resulted in total disability, then the mine worker shall be deemed to be totally disabled as a result of a mine accident. This rule applies even if evidence establishes that the mine related condition is only a small percentage of the disability.

This principle is commonly found in disability benefits programs, see 1 A. Larson, Law of Workmen's Compensation, § 12.20 (1978), and is akin to the tort principle that tortfeasors must take their victims as they find them. It is irrelevant whether a person with normal kidneys would have sustained permanent damage to his kidneys as a result of an accident. The question is whether the accident contributed in some part to the disability of appellant.

We conclude that there is not substantial evidence in the record to support a finding that the accident *did not* contribute to appellant's disability. To the contrary, the evidence overwhelmingly establishes that the accident *did* contribute to his disability. Therefore, the decision of the district court affirming the decision denying disability benefits must be reversed.

### III

In addition to the statements of Drs. Bender and Klompus that persons with normal kidneys would not have been injured permanently by the fall, appellee relies upon three pieces of evidence for support of the denial of benefits: (1) testimony by both doctors that appellant was, in a sense, "lucky" to have had this accident because it resulted in the discovery of a dangerous kidney condition; (2) appellant's alleged statement to Dr. Bender that he had noticed blood in his urine for a year before the accident; and (3) the statement of Dr. Bender that he would have placed the same restrictions upon appellant whether he had had the accident.

The first two pieces of evidence only establish appellant had a pre-existing condition. This is not denied by appellant. A pre-existing condition does not make appellant ineligible for a disability pension. This is precisely the situation to which the above-quoted "proximate cause principle" applies.

The third piece of evidence set forth above provides the basis for most of appellee's argument. Appellee takes the position that appellant was actually disabled *before* his fall on the job. He simply was not aware that he was disabled, appellee contends.

To be disabled to the extent necessary to collect a disability pension from the appellee funds, a claimant must be determined to be eligible for Social Security Disability Insurance Benefits. The Social Security Act defines "disability" as: "Inability to engage in any substantial gainful activity by reasons of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Under this test the Social Security Administration determined that appellant is totally disabled.

The argument of appellee assumes that appellant is disabled *solely* because his weakened and oversized kidneys make it too dangerous for him to return to work in the mines or to accept other work in which the risk of reinjuring his kidneys would be great. Under the Social Security Act definition of disability, he would not be considered totally disabled if there were other safer substantial gainful activity in which he could engage. The record establishes that appellant cannot engage in other substantial work because his kidneys are damaged. Dr. Bender testified that the damaged kidneys cause numerous other health

problems, which, when combined with appellant's lack of education, make him unable to perform safer jobs satisfactorily. Both Dr. Bender and Dr. Klompus testified that some of the appellant's kidney damage was caused by the fall. Appellant testified that he felt well until his fall in the mine. His kidneys began bothering him, and he passed profuse amounts of blood in his urine, almost immediately after the fall. He was so sick that he had to be hospitalized. The relationship between appellant's complaints and his fall demonstrate conclusively that part of his kidney damage, and, therefore, part of his disability, was caused by his on-the-job accident. *See Horn v. Mullins*, 650 F.2d 35 (4th Cir. 1981) upholding the reversal of a determination by the UMWA Trust Funds because of the close temporal relationship between a mining injury and the onset of the claimant's permanent and total disability.

The statement of Dr. Bender upon which appellee relies is only one piece of evidence in a record replete with evidence that appellant's fall damaged his kidneys and contributed to his disability. As the district judge observed, "it is axiomatic that fragments of evidence are not to be considered in isolation. Rather the record must be considered as a whole [when reviewing to determine whether substantial evidence exists]." We find that the record as a whole permits but one conclusion: that at least a portion of appellant's disability was caused by his fall while working at his job in the mines.

The judgment of the district court is reversed. The case is remanded with directions to the Trustees of the appellee funds to pay appellant the disability benefits to which he is entitled under the UMWA Funds Pension Plan. The costs of this appeal are taxed against appellee.