837 F.2d 476
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Edward RAINS, Plaintiff-Appellant,
v.
UNITED MINE WORKERS OF AMERICA HEALTH AND RETIREMENT FUNDS;
Harrison Combs, John J. O'Connell and Paul R. Dean, Trustees
of the United Mine Workers of America Health and Retirement
Funds, Defendants-Appellees.
 No. 87-5244.
 United States Court of Appeals, Sixth Circuit.
 Jan. 20, 1988.
 
 Before NATHANIEL R. JONES and RALPH B. GUY, Jr., Circuit Judges, and BAILEY BROWN, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Rains, who is a former coal mine worker, appeals from a summary judgment entered in favor of the United Mine Workers of America (UMWA) 1950 Pension Trust and its Trustees denying him pension benefits. Judicial review of a trustee's decision concerning eligibility for pension benefits is limited to a determination of whether the decision was arbitrary or capricious, not supported by substantial evidence, or contrary to law. Odom v. United Mine Workers of America Health and Retirement Funds, 687 F.2d 843, 846 (6th Cir.1982). Applying that standard to this case, we conclude that the Trustees' decision is supported by substantial evidence and is otherwise in accordance with the law and, therefore, we affirm.
 
 I.
 
 2
 Rains first applied for pension benefits on August 2, 1976. Rains is covered by the 1950 Pension Trust and needed to establish twenty years employment in jobs classified in the then existing coal wage agreement. For years after 1936, Article IV.A. (1) of the 1950 Pension Plan provides that an applicant will receive a full year's classified service credit for any year in which he worked in a classified job for at least 1,000 hours, or earned wages exceeding a specified amount from classified employment. If an applicant worked less than 1,000 hours or earned less than the specified amount, credit is given in quarter-year increments, with hours or earning rounded off to the next lowest one-quarter year. For years prior to 1937, Article IV.A. (1) of the 1950 Pension Plan specifies that a participant will receive one year's credit for each year in which he worked in a classified job for a minimum of at least six months during a calendar year. Partial credit is awarded in quarter-year increments, with months of employment rounded off to the next lowest one-quarter year.
 
 
 3
 Rains' post-1937 employment was verified through Social Security records and is not in dispute. He received thirteen years credit for his employment between January 1, 1937, and the date when he ceased coal mine employment. The years that are in dispute are 1928 through 1937. Rains informed the Trustees that he had worked at Dixie Blue Gem Coal Company (Dixie Blue Gem) from 1928 through 1935, at the Insull Mine Company (Insull) in 1936, and at the Drakes Coal Company (Drakes) in 1937. The Trustees examined Kentucky mining records, which indicated that Dixie Blue Gem operated in 1928, 1930, and 1935, and from 1931 through 1933 under the Nevisdale name, but not in 1934. Although Dixie Blue Gem operated in six of the eight years Rains claimed to have worked there, there was no documentary evidence that Rains actually did work for Dixie Blue Gem in those years, or that he worked there in at least six months of each year, as required by the 1950 Pension Plan. Credit for years prior to 1937, therefore, was denied. On September 9, 1977, Rains was notified that his pension application had been denied for failure to establish twenty years' classified service.
 
 
 4
 Rains appealed this denial. However, due to the coal strike of 1978, no hearing was held until April 12, 1979. The hearing was limited to the issue of the denial of pension credit for the years 1929 through 1936. At the April 12, 1979 hearing, Rains submitted his marriage certificate dated March 19, 1936, which listed his occupation as a mine worker. On the strength of this certificate, the hearing officer gave Rains credit for another year. Rains also presented several witnesses who testified that they worked with him at various times from 1928 until 1936 at numerous mines. Subsequent to the hearing, the hearing officer also contacted other former co-workers of Rains.
 
 
 5
 The hearing officer ultimately concluded that:
 
 
 6
 sufficient documentary evidence has not been submitted to substantiate Rains' employment, nor does oral testimony provide conclusive evidence to establish Rains' employment from 1928-1935.
 
 
 7
 Through this initial hearing stage, Rains had been represented only by a fellow miner, Gillis Brassfield. After the denial of benefits, however, Rains retained an attorney and, to some degree at least, this whole matter started over again. More statements of co-workers were submitted and the new and old evidence was reviewed and denied again for the same reasons as in 1980.
 
 
 8
 In September of 1981, Rains filed this action in the district court. Although in litigation, the parties continued to amass and consider evidence bearing on Rains' pre-1937 work history. For example, Rains submitted a copy of his father's death certificate bearing a date of December 8, 1928, and a certificate from the Whitley County Board of Education indicating that Rains attended school during the 1929-30 school year but noting that attendance was irregular. This evidence plus deposition testimony and additional co-worker affidavits was reviewed for a third time and again denied. After this third denial, the district court granted summary judgment to defendants, but in doing so granted work credit to Rains for 1930, 1931, 1932, 1933, and 1935 giving him a total of nineteen years--one short of the magic number.
 
 II.
 
 9
 On appeal, Rains raises a number of issues but interestingly does not claim that the Trustees' decision was not supported by substantial evidence. He claims, however, that the decision was arbitrary and capricious and further argues that the Trustees are barred from denying him a pension by the doctrines of equitable and collateral estoppel. Although these three claims involve vastly different legal propositions, they all have their genesis in the same occurrence.
 
 
 10
 At Rains' first hearing, he came prepared to offer the testimony of several co-workers, as well as the testimony of his younger brother, Dennis Rains. Rains claims that before he could offer the testimony of his brother, the hearing officer said she did not want to hear any more witnesses and that Rains had established his eligibility. There is no record made of these hearings so it is impossible to refute or corroborate this claim from the record. Rains did receive a letter dated August 6, 1979, that stated his file was being transmitted to Washington with a recommendation of approval. This letter was sent by Don C. Bunch, Director, Big Stone Gap Field Service office. It is also clear from the record that the written report of the hearing examiner recommends denial of the claim for pension benefits based upon a failure to establish the necessary pre-1937 year of employment credit. To further complicate the matter, Dennis Rains died in 1981 and so was not available to testify after that time.
 
 III.
 
 11
 Although we will address Rains' specific appeal issues, his primary problem is that he simply could not establish his pre-1937 work history with sufficient specificity to carry his burden of demonstrating eligibility for a pension. In order to satisfy the 1950 Pension Plan's twenty-year classified service requirement, Rains had to establish seven additional years of classified service prior to 1937. For years prior to 1937, the Pension Plan requires that an applicant have worked at least six months during a calendar to receive one-year's classified service credit. To establish a total of seven years of classified service prior to 1937, Rains would have to have received full credit for seven of the nine disputed years--1928-1936. Rains was awarded a year's credit for 1936 but he still needed to establish an additional six years' credit. Although Rains initially claimed service credit for 1928, he later testified at the Fund's hearing that he actually began working at Dixie Blue Gem in February, 1929, at the age of twelve. Therefore, no credit could be awarded for 1928. Similarly, no credit could be awarded for 1929, because Rains' school records state that he attended the Little Patterson Creek Elementary School, albeit irregularly, through May or June, 1930. Based upon these school records and the record and the testimony of a co-worker that Blue Gem only operated for three months per year prior to 1933, the district court held that Rains could not establish more than three months credit for 1929. Moreover, no credit could be awarded for 1934 because the Kentucky mining records disclose that Dixie Blue Gem did not operate in that year. Thus, Rains could establish, at most, a total of five additional years' service prior to 1937. Since he needed six more years of credit, Rains failed to satisfy the twenty-year classified service requirement.
 
 
 12
 Further, even assuming Rains did work at Dixie Blue Gem at various times in each year between 1928 and 1933, and in 1935, he could not establish a total of six years' classified service during that period because the evidence indicated Dixie Blue Gem operated only approximately three months per year prior to 1933. Therefore, at most, Rains could establish only one-half year's credit for any year prior to 1933 or, at most, a total of two and one-half years for the period 1928-1932. Therefore, even with full credit for the years 1933 and 1935, Rains could only establish eighteen and one-half years' credit.
 
 
 13
 Rather than attempting to refute this evidence, Rains falls back on his arguments about being misled by the oral statement of the first hearing officer. In that regard, we are unable to see how the testimony of Dennis Rains would have changed the result of this case. Dennis would have been only nine years old in 1929, and the record is not clear from other co-workers whether Dennis ever worked in the mines with his brother. Furthermore, we note that Rains was initially denied benefits in 1979 after which he submitted numerous affidavits of co-workers. Dennis Rains was alive until 1981 but no affidavits were ever submitted from him. Thus, there is no case made for equitable estoppel.
 
 
 14
 Rains' collateral estoppel argument is predicated upon the case of Crouse v. United Mine Workers of America health and Retirement Fund, Civil Action No. 79-5070 BK (S.D.W.Va. March 24, 1981). In Crouse, the court took notice of an internal memorandum issued in 1975 by the 1950 Pension Plan, which describes the duties of the Trustees' hearing officers and audit staff. The memorandum states that the audit staff will not reweigh the evidence, but will merely determine whether there was some evidentiary basis for the hearing officer's findings as to a disputed fact, and that the hearing officer's findings of fact will be subject to reversal only if there is no evidentiary basis for them. Crouse, Court Order at 2. Based on this internal memorandum, the court held that it was arbitrary and capricious for the audit staff to have reversed the hearing officer's finding of fact where those findings were "based on 'some' evidence" and where the hearing officer had resolved questions of the credibility of witnesses in the applicant's favor. Crouse, Court Order at 4.
 
 
 15
 Crouse is clearly distinguishable in that after Rains' hearing, the hearing officer held against him. Thus, there was no audit staff reversal as in Crouse.
 
 
 16
 Finally, we find no merit to Rains' contention that this decision was arbitrary and capricious. Although it is true that a decision can be arbitrary and capricious even if supported by substantial evidence, the burden of persuasion becomes more difficult. Rains essentially argues that it is wrong to tell a claimant he is eligible and then later deny him benefits. If such a statement were in fact made it is regrettable. But Rains was given a period of several years after this first hearing to submit anything and everything he wanted that might prove his claim. There is no doubt that a pension is of extreme importance to one who labored for years in this nation's coal mines and such a reward should not be lightly denied. The Trustees, however, have a fiduciary duty to the fund under ERISA and may not allow the fund to be dissipated by the payments of claims other than those clearly eligible.[1]
 
 
 17
 AFFIRMED.
 
 
 
 [1]
 Although we review this on the basis of Rains having, after repeated efforts, come within one year of sufficient work credits, it is only fair to note that the defendants do not agree that the district court correctly gave full year credit for the disputed years that he added to Rains' total