848 F.2d 472
 David M. ROBERTSON, Plaintiff-Appellant,
v.
Joseph P. CONNORS, Sr., Trustee; Paul R. Dean, Trustee;
William B. Jordan, Trustee; William Miller, Trustee;
Donald Pierce, Jr., Trustee, and their successors as such of
the United Mine Workers of America Health & Retirement
Funds, 2021 K. Street, North West, Washington, DC 20006,
Defendants-Appellees.
 No. 87-2136.
 United States Court of Appeals,
Fourth Circuit.
 Argued March 9, 1988.
Decided June 7, 1988.
 
 Kathryn R. Bayless (Bayless & Wills, Princeton, W.Va., on brief) for plaintiff-appellant.
 Thomas S. Gigot, Asst. Gen. Counsel, UMWA Health & Retirement Funds, Office of Gen. Counsel (Gerald E. Cole, Jr., Gen. Counsel; Israel Goldowitz, Deputy Gen. Counsel, Washington, D.C., on brief) for defendants-appellees.
 Before PHILLIPS and SPROUSE, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.
 SPROUSE, Circuit Judge:
 
 
 1
 David M. Robertson appeals from the summary judgment granted by the district court to the Trustees of the United Mine Workers of America Health and Retirement Funds. The district court found that substantial evidence supported the Trustees' ruling that Robertson's disability did not stem from a mine accident. We reverse.
 
 
 2
 Robertson was operating a coal shuttle car on the night of July 22, 1980 in a Consolidation Coal Company mine in West Virginia when the car struck a roof bolt. The collision and Robertson's efforts to avoid serious injury resulted in him becoming separated from the shuttle car. Dr. S.V. Garcia treated Robertson the next day and diagnosed a strained neck and a bruised groin. Dr. Garcia estimated that Robertson would be disabled from work for four days or less and referred him to Dr. Craig Brown, Robertson's family physician. Dr. Brown treated Robertson on July 25 and in subsequent weeks as Robertson complained of pain, weakness, and muscle spasms in his right arm, shoulder, and neck. Robertson was diagnosed as having contusions to the neck and spine, and Dr. Brown opined that Robertson would be disabled from work for two to three months.
 
 
 3
 Between August 1980 and January 1984 Robertson visited at least four medical doctors, three neurosurgeons, four orthopedic surgeons, two psychologists, eight psychiatrists, and various counselors and physical therapists seeking relief from pain and other ailments in the neck and upper right arm. Treating and examining doctors persistently disagreed over the extent and permanence of the physical injuries suffered by Robertson in the July 1980 mine accident. Yet Robertson always insisted after the accident that he was suffering debilitating pain and other symptoms which prevented him from working.
 
 
 4
 As early as September 1980, an examining neurosurgeon wrote that a "possible psychological overlay" accounted for Robertson's continuing claims of debilitating symptoms. The first psychiatrist to treat Robertson suggested in February 1981 that he was suffering from psychogenic pain. In the summer of 1981, the next psychiatrist examining Robertson diagnosed him as having hypochondriacal neurosis. Further examinations in 1982, 1983, and 1984 yielded diagnoses of severe chronic anxiety disorder, dysthymic disorder, and a somatic conversion reaction to the mine injury.
 
 
 5
 In August 1982 an Administrative Law Judge (ALJ) ruled that Robertson was eligible for Social Security disability benefits beginning from July 22, 1980, the date of Robertson's mine accident. The ALJ found that Robertson suffered from a number of physical and psychological ailments and qualified for disability under the Social Security Administration's impairment listing for depressive syndrome.[1]
 
 
 6
 Robertson applied in April 1982 for a disability pension under the terms of the United Mine Workers of America 1974 Pension Plan. A year later the Trustees denied Robertson's application on the basis that he had not established a mining accident caused his disability. Robertson appealed and submitted additional medical evidence. The Trustees, upon the recommendation of their medical consultants, again denied Robertson pension benefits.
 
 
 7
 The medical consultants acknowledged Robertson's disability. They felt, however, that there was no causal link between the mine injury and the disability. They reasoned that he had exhibited physical and psychiatric ailments before the injury and had suffered no lasting physical injury as a result of the mine accident.[2]
 
 
 8
 After summarizing the evidence, the consultants concluded:
 
 
 9
 In light of all the evidence of the applicant's prior emotional history, and evidence in the file ... that the applicant's emotional problems are due to his "physical problems," the decision in this case will turn largely on whether his physical problems related to the mine accident of July 22, 1980 are substantial. In my opinion, the evidence fails to establish that they are.
 
 
 10
 ....
 
 
 11
 Although as noted in the previous analysis there are contradictory opinions regarding the nature and extent of Mr. Robertson's physical impairment ... the overall weight of the medical evidence in the file indicates that he does not have a substantial physical problem from his neck injury of July 22, 1980. Moreover, the evidence establishes that his psychiatric condition is of long standing duration and ... appears to have contributed to his delayed recovery from a relatively minor neck injury, rather than having been caused or aggravated by that injury.
 
 
 12
 Under the terms of the UMWA 1974 Pension Plan, a Social Security disability award conclusively establishes the medical disability of the pension applicant.[3] The Pension Plan further requires that the applicant show that he became disabled "as the result of a mine accident." As the United States District Court for the Western District of Virginia stated in Horn v. Mullins,
 
 
 13
 The only reasonable interpretation of the requirement that total disability be "the result of a mine accident," therefore, is that it requires total disability to have been proximately caused by the mine accident. That is, if the plaintiff was injured in a mine accident and that injury, whether in combination with a previous or subsequent condition, is substantially responsible for plaintiff's inability to perform his job and for whatever medical and vocational reasons he is unable to perform an alternative job, then his total disability results from a mine accident.
 
 
 14
 498 F.Supp. 1197, 1200 (W.D.Va.1980), aff'd., 650 F.2d 35 (4th Cir.1981).[4]
 
 
 15
 The issue facing us on appeal is whether the Trustees' decision that the mine accident was not substantially responsible for Robertson's disability was arbitrary or capricious. That, in turn, requires us to decide if their determination was supported by substantial evidence. Horn, 650 F.2d at 37; accord Stanton v. Gulf Oil Corp., 792 F.2d 432, 434 (4th Cir.1986). We are persuaded that there is not substantial evidence to support the Trustees' decision.
 
 
 16
 The Trustees, relying on the advice of their medical consultants, apparently assumed that they must weigh the seriousness of Robertson's neck injury before they could credit any medical testimony that he was psychiatrically disabled as a result of the combined physical and psychiatric problems stemming from the mining accident. Having determined the physical injury caused by the accident was minor, the Trustees concluded that the accident was not the cause of Robertson's disability. The Trustees misconceived their responsibilities. See generally, Church v. Huge, 500 F.Supp. 133 (W.D.Va.1980) (Trustees erroneously refused to grant award for somatic conversion symptoms); Bolling v. Bowen, 682 F.Supp. 864 (W.D.Va.1988) (disability caused by psychological overlay in connection with a minor physical injury is compensable; psychological overlay common among coal miners). The medical evidence conclusively establishes that Robertson's inability to work resulted from the combination of his neck injury and psychiatric disabilities related to it.[5] Parsing the testimony of numerous medical experts to arrive at an independent medical judgment that the neck injury was so minor that it could not have caused a psychiatric disability was beyond the Trustees' responsibility.
 
 
 17
 The Trustees emphasized Robertson's previous psychiatric complaints, some of which were similar to the problems exhibited after the mine accident. Those previous psychiatric problems, however, were not permanently disabling. Uncontradicted evidence shows that from the date of the mine injury Robertson persistently complained of debilitating pain and repeatedly was diagnosed as having hypochondriacal neurosis, psychological overlay, and other ailments. It is true that in the mines he suffered only a comparatively minor neck injury and that the resulting symptoms may have been aggravated by a previous neck injury. Importantly, however, prior to the mine accident, his manifestations of pain did not prevent his return to work. To be entitled to a disability pension, Robertson was only required to show that his mine injury proximately caused or was substantially responsible for his disability. In short, the Trustees' determination that the combined psychological and physical effects of the injury received in the mine accident did not substantially cause Robertson's total disability cannot be supported by the record.
 
 
 18
 In view of the above, the judgment of the district court is reversed. The case is remanded with instructions to order the award of benefits to Robertson.
 
 
 19
 REVERSED AND REMANDED WITH INSTRUCTIONS.
 
 
 
 [1]
 12.04 Affective Disorders: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation
 The required level of severity for these disorders is met when the requirements in both A and B are satisfied.
 A. Medically documented persistence, either continuous or intermittent, of one of the following:
 
 
 [1]
 Depressive syndrome characterized by at least four of the following:
 a. Andehonia or pervasive loss of interest in almost all activities; or
 b. Appetite disturbance with change in weight; or
 c. Sleep disturbance; or
 d. Psychomotor agitation or retardation; or
 e. Decreased energy; or
 f. Feelings of guilt or worthlessness; or
 g. Difficulty concentrating or thinking; or
 h. Thoughts of suicide; or
 i. Hallucinations, delusions or paranoid thinking;
 ....
 AND
 B. Resulting in at least two of the following:
 
 
 [1]
 Marked restriction of activities of daily living; or
 
 
 [2]
 Marked difficulties in maintaining social functioning; or
 
 
 [3]
 Deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere); or
 
 
 [4]
 Repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors)
 
 
 [20]
 C.F.R., Part 404, Subpt. P, App. 1 Sec. 12.04(A)(1), (B) (1987)
 
 
 [2]
 Robertson was hospitalized for an anxiety tension state in 1972 and psychophysiological chest pain in 1979. He suffered a neck injury in an auto accident in 1977
 
 
 [3]
 The UMWA 1974 Pension Plan reads in pertinent part:
 Any Participant who (a) has less than 10 years of signatory service prior to retirement and (b) becomes totally disabled as the result of a mine accident ... shall, upon retirement ... be eligible for a pension while so disabled. A Participant shall be considered to be totally disabled only if by reason of such accident he is subsequently determined to be eligible for Social Security Disability Insurance Benefits....
 United Mine Workers of America 1974 Pension Plan, Art. II pt. D (1981). Accord, Horn v. Mullins, 650 F.2d 35, 37 (4th Cir.1981) ("social security award creates an 'irrebutable presumption' of disability").
 
 
 [4]
 Compare Odom v. UMWA, 687 F.2d 843, 847 (6th Cir.1982), where the Sixth Circuit discussed the appropriate causation standard and concluded "[t]he question is whether the accident contributed in some part to the disability...." Odom developed this less stringent proximate cause interpretation from the "principle ... commonly found in disability benefits programs" and from guidelines promulgated by the Trustees. Id
 
 
 [5]
 Our decision is bolstered by the ALJ's determination that Social Security disability for Robertson's depressive syndrome commenced on the date of the mine accident. See Horn, 650 F.2d at 37 (critical factor in determining causation of disability for UMWA pension eligibility was ALJ's decision that Social Security disability ensued two days after mine accident)