NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0555n.06
Filed: June 28, 2005

No. 04-5025

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

CHARLES BALL,

      Plaintiff-Appellee;

      v.

MICHAEL H. HOLLAND, et al. as Trustees of the
UNITED MINE WORKERS OF AMERICA 1974
PENSION PLAN AND TRUST;

      Defendants-Appellants.

On Appeal from the United
States District Court for the
Eastern District of Kentucky

---

**Before:** **BOGGS, Chief Judge; CLAY, Circuit Judge; WALTER, District Judge**[*]

**WALTER, District Judge.** Defendants-Appellants, the Trustees of the United Mine Workers of America 1974 Pension Plan and Trust ("Trustees"), appeal from the district court's grant of summary judgment to Plaintiff-Appellee, Charles Ball ("Ball").

The Trustees denied Ball disability pension benefits after determining that his disability, affective (mood) and anxiety disorders, was not the result of a mine accident. Ball appealed the Trustees' decision by filing a complaint in the United States District Court for the Eastern District

---

[*]The Honorable Donald E. Walter, United States District Judge for the Western District of Louisiana, sitting by designation.

of Kentucky. Cross-motions for summary judgment were filed, with the district court granting

Ball's motion and denying the Trustees' motion.

The Trustees contend that the district court improperly applied the "arbitrary and capricious"

standard of review and that the Trustees' administrative decision to deny Ball's application for

disability pension benefits was supported by substantial evidence. This court agrees with the

Trustees. As such, the district court's decision is hereby REVERSED and the decision of the

Trustees is reinstated.

## I.

Ball worked as a coal miner for Arch of Kentucky from 1975 until January 1997. During

that time Ball was injured in three mining accidents. In May 1993, Ball strained his back and right

shoulder while lifting blocks at work. He did not receive medical attention specifically for that

injury, but a doctor treating him for an unrelated condition in June 1993 noted that his shoulder was

improving and was expected to heal fully within a few weeks. In March 1994, Ball injured his left

shoulder in a mine accident, but did not seek medical attention and lost no time at work. Finally,

in June 1996, Ball sustained neck and back injuries as a result of an explosion in the mine. He was

treated in a hospital emergency room two days later for back pain apparently caused by a bruise on

his lower back, and released the same day. In 1997 Ball resigned from Arch at the suggestion of his

doctor. He then worked briefly as a truck driver, but soon found himself unable to work due to

numerous emotional and physical problems.

In addition to the injuries Ball sustained in the mine accidents, he experienced many other

medical problems. In September 1992, Ball was admitted to a hospital for treatment for persistent

otorrhea (discharge from the ear) caused primarily by herpes zoster of the ear, which caused him

extreme pain. Ball was treated for severe ear pain in 1993, 1995, 1996, and 1999, and was prescribed

narcotic pain killers, to which he became addicted.  The pain and bleeding caused by the herpes zoster prevented Ball from working on several occasions.  In March 1997, Ball's primary care physician, Dr. F. Andrew Morfesis opined that Ball was unable to go back to work in the coal mines due to problems with herpes zoster.

In July 1994, Ball was diagnosed with bilateral carpal tunnel syndrome, for which he received workers' compensation.  However, Ball never claimed the bilateral carpal tunnel syndrome was a result of a mine accident.  Ball's primary physician, Dr. Morfesis, and an orthopedic surgeon, Dr. David E. Muffly, have subsequently opined that Ball's disabilities are the result of this carpal tunnel syndrome.

Beginning in 1992, Ball's physicians also reported that he had emotional problems.  Ball was advised to seek psychiatric help on several occasions.  The physicians opined that Ball suffered from depression, insomnia and anxiety due to stress, financial problems and family issues.

Ball has also been treated several times for back pain and arthritis.  In November 1994, Ball complained of lower back pain allegedly caused by carrying an oxygen tank and compressor in the mine, but a neurological examination showed no damage.  In July 1996, Dr. Morfesis noted that Ball suffered from arthritis related to repetitive work trauma, and diagnosed back pain syndrome without any specific cause.  During 1999 and 2000, Ball was treated for back pain by at least nine different physicians.  At some of these visits, Ball told the physicians that his back pain began after a 1996 mining accident.  However, at other visits, Ball stated that he had no previous back injuries, that his back had just begun to hurt one morning, he had no hip or back pain in the past, and that his back pain was "unprovoked".

## II.

This court reviews a district court's grant of summary judgment *de novo*.  *See Roush v.*

*Weastec, Inc.*, 96 F.3d 840, 843 (6th Cir. 1996). In reviewing the district court's judgment, we must determine whether the district court applied the proper standard of review in assessing the merits of the summary judgment motion. In ERISA cases, the decisions of a plan administrator are subject to review under the "arbitrary and capricious" standard if the plan vests discretionary authority in the administrator. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 (1989); *Wendy's Int'l v. Karsko*, 94 F.3d 1010, 1012 (6th Cir. 1996). In this case, the parties and the district court agree that the Plan vests discretionary authority in the Trustees, and that the arbitrary and capricious standard applies. Therefore, the abuse of discretion standard requires "that the Trustees' decision be upheld if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Baker v. United Mine Workers of Am. Health & Ret. Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991).

## III.

Article II.C. of the Plan provides that:

> A Participant who . . . becomes totally disabled *as a result of* a mine accident . . . shall, upon retirement, be eligible for a pension while so disabled. A participant shall be considered to be totally disabled only if by reason of such accident such Participant is subsequently determined to be eligible for Social Security Disability Insurance Benefits.

(emphasis added). In order to be entitled to benefits, Ball is only required to show that his mine accidents were "substantially responsible" for his disabilities, not that the accidents were the sole cause of his disabilities. *See Robertson v. Connors*, 848 F.2d 472, 476 (4th Cir. 1988); *see also Boyd v. Trustees of United Mine Workers Health & Ret. Funds*, 873 F.2d 57, 59 (4th Cir. 1989) (addressing the pension plan at issue in this case, and stating that disability "as a result of a mine accident" requires that the mine injury be "substantially responsible for plaintiff's inability to perform his job").

The district court misinterpreted the causation requirement of the Plan. The court ruled that the Trustees' decision must be based on whether the mine accidents contributed "in some part" to Ball's disabilities, and not whether they were substantially responsible for the disabilities (citing *Odom v. Mine Workers of Am. Health & Ret. Funds*, 687 F.2d 843, 847 (6th Cir. 1982)). The district court found that substantial evidence existed that Ball's depression and anxiety were at least partially caused by pain resulting from the accidents, and therefore reversed the Trustees' decision. This interpretation of the Plan's causation requirement is not warranted by either the text of the Plan itself, which simply states that the disability must result from an accident, or by the cases cited by the district court in support of its reading.

The district court relied on two cases holding that causation may be established by showing that a mine accident was *a* cause of a claimant's disability, even if it was an insignificant cause, or merely exacerbated a preexisting disability unrelated to the accident. *See Boyd v. Trustees of the United Mine Workers Health & Ret. Funds*, 873 F.2d 57, 60 (4th Cir. 1989) (proximate causation established when injury exacerbated a preexisting condition or combined with pre- or post-accident conditions); *Odom*, 687 F.2d at 848 ("the record as a whole permits but one conclusion: that at least a portion of appellant's disability was caused by his fall while working at his job in the mines."). Neither case justifies the district court's *de minimis* requirement that Ball's mining accidents need only have contributed in some part to his disability. Far from employing a *de minimis* causation requirement, *Boyd* made clear that --- as we noted above --- a worker will only be eligible for benefits "if the plaintiff was injured in a mine accident and that injury, whether in combination with a previous or subsequent condition, is *substantially responsible* for plaintiff's inability to perform his job..." 873 F.2d at 59 (emphasis added) (quoting *Robertson*, 848 F.2d at 476). *Odom* did employ a *de minimis* causation requirement, but did so only after noting that the "proximate cause principle"

set forth in the Union's "Health Services Card Processing for Disabled Mine Workers" stated that:

> If the mine accident aggravated a pre-existing condition to the extent that the person became totally disabled, or if the mine accident occurred after a non-mine related injury and the two injuries combined resulted in total disability, then the mine worker shall be deemed to be totally disabled as a result of a mine accident. This rule applies even if evidence establishes that the mine related condition is only a small percentage of the disability.

*Odom*, 687 F.2d at 847. There is no evidence in the record that this document is still in effect, and neither Ball nor the district court claim that the Trustees are still bound by this definition of proximate cause. Absent such evidence, the Trustees' decision must be upheld if substantial evidence exists that Ball's mine accidents were not a substantial cause of his disabilities.

The district court's conclusion that the Trustees' denial of benefits was not supported by substantial evidence is premised on the court's erroneous application of a *de minimis* causation requirement. The district court found that the opinions of Drs. Evans and Riggs and Ms. Taylor were sufficient to establish that Ball's 1996 accident was at least *a* cause of his disabilities. The Trustees could not reasonably reject those opinions, the court concluded, because the opinions of Evans and Taylor were relied on by the Social Security Administration in its disability determination,[1] and because the Trustees had no reason to doubt Dr. Riggs's competency. Given this evidence that the accident played a role in causing Ball's disabilities, the district court rejected as irrelevant the evidence the Trustees relied on that indicated other causes for his depression and anxiety because -- under the district court's interpretation of the Plan's causation requirement -- Ball

---

[1]The district court ascribes undue significance to the fact that the Social Security Administration relied on the reports of Dr. Evans and Ms. Taylor in determining that Ball was disabled. The SSA's determination was limited to the fact of Ball's disability, not with its ultimate cause, and the SSA therefore could have accepted Evans's and Taylor's conclusions that Ball's depression was caused by severe pain without also accepting, or even considering, their further conclusions that his pain was caused by the 1996 accident.

was not required to show the accident was a substantial cause of his disabilities in order to be eligible for pension benefits.

Applying the correct "substantial causation" test, the Trustees' determination is supported by substantial evidence. There is substantial evidence, in the form of the SSA's determination of the onset date of Ball's disability, that his depression and anxiety did not rise to the level of total disability until late 1999, three years after Ball's last mining accident. There is substantial evidence that Ball's depression and anxiety were caused by several factors, among which severe pain was but one factor. There is also substantial evidence that Ball's pain was caused by several factors, including herpes of the ear, degenerative back problems, which cannot be deemed due to a mining accident under the terms of the Plan, and carpal tunnel syndrome, which two doctors believe to have been the primary cause of his suffering, and which has never been claimed to be due to a mining accident. Finally there is substantial evidence that the injuries caused by Ball's mining accidents were not particularly serious in comparison with his other problems. Given this evidence that Ball's mining accidents constituted, at most, one of many causes of his pain, which was in turn but one of several causes of his disabilities, the conclusions of Drs. Evans and Riggs and Ms. Taylor that Ball's depression was caused by pain resulting from his 1996 accident do not compel a contrary conclusion. The opinions of Drs. Evans and Riggs and Ms. Taylor appear to have been based on Ball's self-reported medical history, in which he emphasized the injuries he suffered in 1996. The Trustees' denial of benefits does not entail an unjustified mistrust of the conclusions of these doctors that Ball suffered from depression caused in part by severe pain; only a mistrust of their conclusion that the cause of that pain was his 1996 accident. Therefore, the decision of the district court is REVERSED and the decision of the Trustees' is reinstated.

**CLAY, Circuit Judge, dissenting.** The record in this case demonstrates that Charles Ball's disabilities were substantially caused by chronic pain, including pain resulting from a 1996 mining explosion in which he injured his back. Ball was therefore entitled to receive benefits under the United Mine Workers of America 1974 Pension Plan, and neither the plan administrator's decision denying him those benefits, nor the majority's endorsement of that decision today, is supported by substantial evidence.

Under the Pension Plan, a miner is entitled to disability benefits when he "becomes totally disabled as a result of a mine accident." The Pension Plan offers no further discussion of the causation standard to be employed. The majority purports to rely on *Robertson v. Connors*, 848 F.2d 472 (4th Cir. 1989) to define "as a result of," but actually employs a standard stricter than that adopted in *Robertson*. By doing so, and by glossing over the medical evidence in this case, the majority arrives at the erroneous conclusion that Ball is not disabled "as a result of a mine accident."

In *Robertson*, the Fourth Circuit explained that under the Pension Plan, a miner's total disability results from a mine accident when he is "injured in a mine accident and that injury, *whether in combination with a previous or subsequent condition*, is substantially responsible for plaintiff's inability to perform his job and for whatever medical and vocational reasons he is unable to perform an alternative job." *Robertson*, 848 F.2d at 475 (emphasis added). The majority claims to adhere to this standard. However, it essentially ignores the italicized language, with disastrous results for Ball, as it was the pain caused by a mining accident, in combination with pain caused by other medical problems, which substantially caused his disabling depression and anxiety.

Before explaining further how Ball is able to meet the requirements of the *Robertson* causation standard, it is worth noting the lengths to which the majority goes to prevent Ball from relying on a lesser standard of causation. The majority strongly urges that *Odom v. Mine Workers*

*of Am. Health & Ret. Funds*, 687 F.2d 843, 847 (6th Cir. 1982), which authorizes a "contributed in some part" standard of causation, is inapplicable here. According to the majority, *Odom* is irrelevant because it was based in part on *de minimis* language set forth in the UMWA's "Health Services Card Processing for Disabled Mine Workers," and "there is no evidence in the record that this document is still in effect."

The majority's argument in this respect was never made by Defendants. In fact, Defendants have repeatedly articulated a causation standard identical or similar to that announced in *Odom.* In moving for summary judgment, Defendants cited *Odom* for the proposition that Ball was required to show either that a mine accident was "substantially responsible for" his disability, or merely that it "contributed in some part to" his disability. Defendants' brief suggests that Ball need only establish a "causal link" between his mining accidents and his disability. Finally, the pension analyst who wrote the report denying Ball's application for pension benefits framed the causation question as whether Ball's disability was "related to a mine accident."

There can be no doubt that Ball would prevail if he were simply required to show that his mine accident "contributed in some part" to his disability, or that his disability was "related to" a mine accident. This makes the majority's reliance on arguments never articulated by Defendants to bar Ball from prevailing via such a showing particularly troubling. Defendants do not challenge the district court's enunciation of the causation standard, and it is generally established that an appellate court will not entertain issues which are not raised in the appellant's brief. FED. R. APP. P. 28(a); *Bickel v. Korean Air Lines Co., Ltd.* 96 F.3d 151, 153 (6th Cir. 1996); *Priddy v. Edelman,* 883 F.2d 438, 446 (6th Cir.1989).

The majority's consideration of an argument not raised in the briefs, which resulted in its rejection of the *Odom* standard, would less troubling had it correctly applied the *Robertson* standard.

A correct reading of *Robertson* makes it clear that Ball was entitled to benefits under the Plan if the pain he experienced as a result of injuries sustained in mining accidents, in combination with both pre- and post-existing factors, is substantially responsible for his disabling mood disorders. Ball satisfied this standard, and the plan administrator's determination to the contrary is not supported by substantial evidence.

As the majority notes, the relevant disability for purposes of the Pension Plan is the disability determined by the Social Security Administration, which found that Ball was disabled by an anxiety disorder and depression. Though the majority gives it short shrift, there is much evidence, in the form of reports from various doctors and a social worker, that those disabilities were substantially caused by the great pain and suffering affecting Ball as a result of the mining accidents and other injuries.

It is true that Ball's pain and depression pre-dated the 1996 mine explosion in which he injured his back. However, it is also very clear that Ball's pain was greatly exacerbated by the back injury. He was treated for the back injury with Percocet. Ball's medical records indicate that tenderness in his lower back area and his limited range of motion remained over a month after the accident. Over the next few years, Ball's complaints of back pain increased. In 1999, Ball was treated by Dr. John W. Gilbert, who diagnosed him with various back ailments and noted that his back pain dated back to the 1996 accident. Dr. George Privett performed an MRI on Ball in July 1999, finding several back problems and observing that Ball's back pain was the result of the 1996 accident. In December of that year, Ball was seen by licensed social worker Deirdra Fisher Taylor, who observed signs of a major depressive disorder, and noted that "chronic pain and other issues" necessitated therapy. Taylor ascribed the pain to the 1996 explosion. On the same day, Ball saw Dr. Robert Evans, who diagnosed him with various back problems dating back to the 1996 accident.

In January 2000, Ball was examined by Dr. Christa Muckenhausen. She noted that Ball had severe low back pain radiating into both legs, as well as neck pain radiating into both shoulders, and observed that sitting, standing, or walking for more than five to ten minutes increased his pain. Dr. Muckenhausen further observed that Ball was "extremely anxious and depressed due to the persistant [sic] pain and the fact that he cannot function as he did previously."

On February 14, 2000, psychiatrist Dr. Rosa Kathleen Riggs saw Ball and reviewed his medical records from six different doctors. Dr. Riggs diagnosed Ball with major depression, generalized anxiety disorder, chronic pain disorder with both psychological factors and a general medical condition consisting of various physical ailments, including back injury. She noted that these mental and physical health problems would make it impossible for Ball to "perform simple, repetitive tasks or relate to others or tolerate the stress and pressures associated with day to day work activities." In April 2001, in response to a letter from Ball's attorney, Dr. Riggs expressed her opinion that Ball is "totally and permanently disabled as a result of that mining accident in 1996." Dr. Riggs explained that the mining accident was the cause of Ball's depression and pain.

Dr. Morfesis saw Ball again on March 13, 2000, for complaints of diffuse arthritis pain, fever blister, and back pain with weakness of the left leg; Dr. Morfesis noted that his left leg problem was due to spinal stensosis. Dr. Morfesis also reported that Ball's wife had left him recently, and that consequently Ball was quite depressed. In a letter dated August 28, 2001, Dr. Morfesis identified himself as Ball's primary treating physician from 1989 to 2000, and wrote: "Charles E. Ball is totally disabled from working as a direct result of the 1994 carpal tunnel injury. Mr. Charles E. Ball sustained this injury at work in the coal mines. In addition he was re-injured in 1996 during an explosion that injured his lower back."

On August 31, 2000, Dr. David E. Muffly saw Ball for an orthopedic evaluation. Ball

complained of back pain dating to the June 1996 injury and continuing problems with carpal tunnel syndrome. Dr. Muffly's assessment was that Ball had recurrent carpal tunnel syndrome with failed second surgery on the right hand and degenerative disc disease, and that he was disabled. Dr. Muffley noted that Ball could lift nothing heavier than ten pounds, should avoid repetitive use of his hands, and could not use hand controls.

Finally, Ball saw Dr. Robert S. Spangler, of Appalachian Psychological Consultants, on August 1, 2002. Dr. Spangler explained that Ball had experienced chronic low back pain as well as pain and both hips, his left leg, and his neck and shoulder since the 1996 mine accident. Dr. Spangler also noted that Ball "developed bouts of depression since the explosion in 1996 that continues to date. This depression has worsened since 1999 but still traces back to his traumatic injury in the 1996 explosion."

It is evident that at least seven doctors diagnosed Ball with back pain dating back to the 1996 mining incident. Three doctors and one social worker opined that Ball's anxiety and depression were attributable in substantial part to that pain. Moreover, not a single doctor has disputed Ball's contention that his mood disorders were substantially caused by his chronic pain, including his back pain. Some physicians have indicated that there were other stressors in Ball's life, but none have suggested that his pain was not a substantial factor. Ball is not required to show that the 1996 accident was the sole cause of his disability. *See Robertson*, 848 F.2d at 476.

In other words, Ball established that pain caused by the 1996 mining accident, in combination with pain from other injuries, was substantially responsible for his depression and anxiety. This suffices under *Robertson* to satisfy the causation requirement of the 1974 Pension Plan. Furthermore, the plan administrator's determination that Ball was not entitled to benefits is simply not supported by substantial evidence, as required under our precedent; indeed, it is not

supported by any evidence at all.  *See Baker v. United Mine Workers of America Health &*

*Retirement Funds,* 929 F.2d 1140, 1144 (6th Cir.1991).  The district court correctly found that the

denial of those benefits constituted an abuse of discretion.  I therefore respectfully dissent.