Willie CHURCH, Plaintiff,

v.

Harry HUGE, Trustee, et al., United Mine Workers of America Health and Retirement Funds, Defendants.

Civ. A. No. 77–0249–A.

United States District Court,
W. D. Virginia,
Abingdon Division.

Oct. 16, 1980.

Matthew J. Cody, Jr., Lebanon, Va., for plaintiff.

Stuart B. Campbell, Jr., Wytheville, Va., William F. Hanrahan, E. Calvin Golumbic, UMWA Health & Retirement Funds, Washington, D. C., for defendants.

MEMORANDUM OPINION

GLEN M. WILLIAMS, District Judge.

Plaintiff, Willie Church, brings this action against the Trustees of the United Mine Workers of America Health and Retirement Funds, seeking to establish entitlement to a pension under the United Mine Workers of America 1950 Pension Plan created pursuant to Article XX of the National Bituminous Coal Wage Agreement of 1974. Jurisdiction derives from Section 301(a) of the Labor Management Relations

Act, Title 29 U.S.C. § 185(a).[1] *Gordon v. ILWU–PMA Benefit Funds*, 616 F.2d 433 (9th Cir. 1980).

Plaintiff filed his present claim for pension benefits on April 24, 1975, maintaining that he became disabled as a result of a mine accident which occurred on February 20, 1968. His claim was denied initially on November 3, 1975, and he requested a hearing. A hearing was held on July 20, 1976, and his claim was again denied and he was informed of the denial by letter dated July 30, 1976. He then commenced this action in the United States District Court to determine whether that decision was supported by substantial evidence. The matter was remanded to the Trustees by the district court on May 22, 1978, and a second hearing was held on April 26, 1979. In a decision sent to plaintiff on April 30, 1979, his claim was again denied. The case was reinstated on the docket on May 22, 1979.

■ Plaintiff is seeking to establish entitlement to a disability pension pursuant to Article II, C of the 1950 Plan which provides as follows:

A participant who is not otherwise eligible for a pension benefit hereunder who became totally disabled prior to the effective date [December 6, 1974] as a result of a mine accident, after May 29, 1946, while employed in a classified job for an Employer, shall be eligible for a disability pension benefit while so disabled. A participant shall be considered to be totally disabled as a result of a mine accident only if, by reason of such accident, he is eligible for social security disability insurance benefits under Title II of the Social Security Act or its successor.

In determining whether plaintiff has met these requirements, the court may not substitute its judgment for that of the Trustees and may reverse their decision only if it is found that the decision was arbitrary, capricious or made in bad faith, not supported by substantial evidence, or erroneous on a question of law. *Danti v. Lewis*, 114 U.S.App.D.C. 105, 312 F.2d 1362 (9th Cir. 1976); *Horn v. Mullins*, 498 F.Supp. 1197 (W.D.Va.1980).

Plaintiff injured his back in a coal mining accident in April of 1967 and suffered additional injuries in September of that year and in February of 1968. He received workman's compensation awards for the last two injuries. In conjunction with his workman's compensation claim for the latter injury, plaintiff contended that the accident had caused disabling psychiatric problems. The Industrial Commission found, however, that plaintiff had not met his burden of proof as to that contention.[2]

---

1. Title 29 U.S.C. § 185(a) provides:

   Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

2. It is important to note, however, that the regulations of the "Funds" specifically set forth that it is the finding of disability by Social Security rather than workman's compensation which is binding and irrebuttable. The Social Security award found the plaintiff to be disabled beginning February 20, 1968 which is the date of his injury in the mines and at which time, he had no psychiatric impairment. It would appear to be sufficient, therefore, to state that the findings of the Social Security Administration of total disability on February 20, 1968 conclusively establishes that the plaintiff's disability resulted from the accident of February 20, 1968 because he had no other disability at that time. The decision of Myron R. Renick, Hearing Examiner, dated February 9, 1971, awarding plaintiff a period of disability, states in part, as follows:

   The evidence further indicates that he reinjured his back in February 1968 when a piece of slate struck him in the back while he was loading coal. He has not worked since that reinjury. It is, therefore, the opinion of the Hearing Examiner that the claimant's period of disability should commence in the month of February (not first) 1968 instead of April 4, 1967, the date on which he alleged that he became unable to work.

   The decision of the Hearing Examiner further states that the Hearing Examiner finds
   (1) that in addition to the impairment found to exist by the prior Hearing Examiner in her decision dated May 24, 1969, claimant suffers from neurosis, anxiety neurosis, and drug dependence which are severe.

From the medical evidence it appears that plaintiff was given an orthopedic evaluation on August 7, 1968. According to the report of the examining physician, Dr. Tillou Henderson, plaintiff sprained his back on February 20, 1968. Dr. Henderson stated that "it was obvious that there was marked overlay in symptoms . . ." and that plaintiff's sensory changes were "not typical of anything of an organic nature." (Exhibit A, pp. 107–108). He then advised as follows:

> From an orthopedic standpoint, there is not much demonstrable. It is apparent from the examination of the patient at this time as well as on previous occasions that his conversion reaction syndrome is the chief disabling feature. From previous experience with many such cases, it would be our opinion that the prognosis is quite poor although we would recommend continued psychiatric care and effort to return [plaintiff to] gainful employment.

Plaintiff was next examined by a psychiatrist, Dr. Pierce D. Nelson, on December 10, 1968. Dr. Nelson advised in a report dated December 10, 1968, that plaintiff's condition "is best described as a psychoneurotic disorder with somatic conversion symptoms referable to [an] old back injury and back function. . . ." He found plaintiff to be "mildly hysterical and depressed" which was "seen as somatic overlay to [his] old back injury and problems of back function." (Exhibit A, pp. 109–110).

Plaintiff visited Dr. W. Eidson Smith on July 29, 1969, with complaints of back pain. Dr. Smith noted at that time that the "exact picture" was not clear although he felt that there was "a distinct possibility that [plaintiff] has an intraspinal disc protusion." (Exhibit A, pp. 51–52). Plaintiff was accordingly admitted to the hospital on that date for further evaluation. His treating physician, Dr. W. Eidson Smith, noted on August 4, 1969, that "no intraspinal pathology was evident" and that plaintiff

"was discharged to be followed by his physician at home." (Exhibit A, p. 53). On September 3, 1969, plaintiff consulted an orthopedic surgeon, Dr. William L. Patterson. In Dr. Patterson's opinion there was "a strong functional overlay" and "undoubtedly some depression." (Exhibit A, p. 113). In his opinion, however, "the neurological examination was normal . . ." He concluded that "much of [plaintiff's] disability lies in the area of his depression and his reaction to the injuries with his loss of time from work . . . ." He felt that plaintiff should not go back to coal mining or similar work. (Exhibit A, p. 114).

On February 9, 1971, plaintiff was awarded social security disability benefits retroactive to February, 1968, when it was determined he became unable to work. In the decision of the social security hearing examiner it was found that plaintiff is suffering "from neurosis, anxiety neurosis, and drug dependence which are severe." (Exhibit A, p. 171). It was then determined that plaintiff's "psychiatric impairments alone meet the listings as set forth in Paragraph 12.04 of the Appendix to Subpart P of Regulation No. 4 of the Social Security Regulations." (Exhibit A, p. 171).

■ In examining the evidence in the present case, the Trust Funds Hearing Officer stated as follows:

> I find the appellant has not met his burden of proof based on the following facts. I do not find evidence of a permanent disability from his mine injury and it would appear to me that he is receiving Social Security Disability Benefits from disability not related to his employment.

(Exhibit A, p. 105). The court finds that this decision is not supported by substantial evidence. All medical evidence of record indicates claimant is suffering from a neurosis following traumatic back injuries resulting from mine accidents, the last accident occurring in February of 1968. From

---

Despite the fact that the regulations of the "Funds" states that all relevant Social Security records should be obtained and made a part of the claimant's file in these cases, there has been complete neglect to obtain the report of

the Hearing Examiner dated May 24, 1969, which lists the impairments which led the Examiner to the decision to establish the date of disability as of February 1968 rather than a later date.

the reports of the doctors addressing plaintiff's psychological problem it is clear that each has concluded that plaintiff's back problem has produced a significant psychological overlay. That is, plaintiff has a disabling psychiatric impairment arising out of a mine accident. Article II, C of the 1950 Pension Plan requires total disability to result from a mine accident. That same language is found in the United Mine Workers of America 1974 Pension Plan, and the court has read it to require that the mine accident proximately cause total disability. *See Horn v. Mullins, supra.* That is, the mine accident must be a substantial cause of disability.[3] In the context of the present case involving psychiatric injury, unless there is substantial evidence to the contrary, the court will find plaintiff's disability to have been proximately caused or substantially caused by a mine accident where the psychiatric injury arises out of such an accident.

■ The Trustees are authorized to promulgate binding "rules and regulations to implement [the 1950] Plan . . . ." 1950 Plan, Art. V, B, (1). Numerous regulations have been promulgated pursuant to that authorization. Additionally, questions and answers have been drafted by the Trustees for guidance in resolving eligibility determinations. One regulation dated April 6, 1976, which was not cited by the Pension Fund Hearing Officer in resolving plaintiff's claim, provides that "[p]sychological/mental disabilities do not make one eligible for a disability pension unless the impairment is due to brain damage caused by a physical blow." If applied, that regulation would preclude recovery in the present case as there is no evidence that plaintiff's psychiatric impairment is due to brain damage caused by a physical blow. The court concludes, however, that the regulation is arbitrary and capricious and is contrary to the provisions of the Plan. The Plan only requires that disability result from a mine accident. *See* 1950 Plan, Art. II, C. As previously set forth, this is another way of stating that total disability must be *proximately* or *substantially* caused by a mine accident. The regulation, on the other hand, would preclude an employee from receiving pension benefits despite traumatic physical injury with a disabling psychiatric

3. The following question and answer promulgated by the Trustees for guidance in resolving causation problems involving physical injuries should be instructive where there is psychiatric impairment:

Q. Does the mine worker meet the Funds' disability criteria for a disability pension in the following cases?
(a) Mine worker suffered a herniated nucleus puposus (slipped disc) in a top fall which occurred while he was performing classified service. Shortly thereafter he strained his back shoveling gravel in his back yard. The combined effects of the two injuries qualified him for a lifetime Workers Compensation Award.
(b) A mine worker suffers a leg injury in a mine accident and is taken to a hospital, where he is given a sedative and prepared for surgery. He rolls off the stretcher on the way to the operating room and suffers a spinal injury which renders him totally disabled.
(c) Mine worker lost one foot in a non–work related automobile accident, then lost the other in a mine accident.
A. (a) Yes, if he meets the medical criteria for Social Security Disability Benefits. Where a condition which resulted from a mine accident is aggravated or compounded by another condition which arises later and is not the direct result of a mine accident, and the two conditions, combined, result in a total disability, the mine worker will be considered "totally disabled as the result of a mine accident," for the Funds' purposes, if:
(1) the condition which resulted from a mine accident contributed substantially to the total disability;
(2) the condition which was not the result of a mine accident was a foreseeable or normal consequence of the condition which was the result of a mine accident, and,
(3) the existence of the condition which resulted from a mine accident substantially increased the probability that the condition which did not result from a mine accident would occur.
(b) No. The mine worker's spinal injury was not a normal or foreseeable consequence of the leg injury.
(c) Yes. If a condition or injury resulting from a mine accident aggravates or combines with a pre–existing condition or prior injury which did not result from a mine accident and the mine worker thereby becomes totally disabled, the mine worker is considered "totally disabled as the result of a mine accident," for the Funds' purposes.

overlay. The regulation is, therefore, in conflict with the Pension Plan and, accordingly, invalid.

Another publication used by the Trustees for guidance in disability pension cases entitled *Guidelines for Approval of Disability Pensions*, states as follows:

There will be a limited number of cases in which the applicant will establish total disability and the occurrence of a mine accident, but it will appear that the mine accident is only partially responsible for the disability. In these cases, the disability shall be deemed to be the result of a mine accident in accordance with the principle of 'proximate cause', as explained below:

(a) If the mine accident aggravated a pre–existing condition to the extent that the person became totally disabled or *if* the mine accident occurred after a non–mine related injury and the two injuries combined resulted in total disability, the person shall be deemed to be totally disabled as a result of the mine accident. This rule applies even if evidence establishes that the mine related condition is only a small percentage of the total disability.

(b) If the mine accident occurred first and *did not result in total disability*, the person shall not be deemed to be totally disabled as a result of the mine accident even if the mine related condition was later aggravated or compounded by a non–mine accident to the extent that the person was totally disabled.[4]

■ To the extent that this regulation is interpreted in all cases to mean that a person can receive a pension where a pre–existing condition is aggravated by a mine accident and cannot recover for a mine accident which is aggravated by a post–accident condition, it is arbitrary and capricious and invalid. Since the Plan requires that total disability must be proximately or substantially caused by a mine accident, whether a psychiatric problem existed first and was aggravated by a mine accident or whether the mine accident occurred first and was aggravated by the psychiatric problem is not the decisive issue.

For the above stated reasons, the court finds that the decision of the Trustees is not supported by substantial evidence, and some of the regulations apparently relied upon by the Trustees are arbitrary and capricious, and will enter summary judgment for the plaintiff.

4. This guideline is in obvious conflict with the "Questions and Answers" set out in Footnote 3.