**Clyde CORNETT, Plaintiff,**

v.

**TRUSTEES OF the UNITED MINE WORKERS HEALTH AND RETIREMENT FUNDS, Defendants.**

**Civil Action No. 95–0104–A.**

United States District Court,
W.D. Virginia,
Abingdon Division.

Sept. 10, 1996.

John Lamie, Abingdon, VA, for Plaintiff.

Glenda Finch, Washington, DC, for Defendants.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, Senior District Judge.

### I. INTRODUCTION.

Plaintiff Clyde Cornett ("Cornett") filed this action challenging the final decision of the Trustees of the United Mine Workers of America 1974 Pension Plan ("Plan") denying his claim for disability pension benefits. This court has jurisdiction over the Trustees' decision pursuant to the Employee Retirement Income Security Act ("ERISA"), specifically 29 U.S.C. § 1132(e).

### II. PROCEDURAL HISTORY.

Cornett applied to the Trustees for a disability pension and claimed that he was totally disabled as a result of a "mine accident." (Record "R." at 165). His application was denied initially by letter dated April 8, 1993. (R. at 2). According to the Trustees, Cornett was not eligible to receive pension benefits because he did not establish that his disability was caused by a "mine accident" as defined by the regulations interpreting the 1974 Pension Plan. (*Id.*). Cornett then requested a hearing to review the Trustees' denial of his application. (R. at 180). Following a July 29, 1993, hearing before a trust fund hearing officer in Big Stone Gap, Virginia, Cornett's claim was denied on January 11, 1994. (*Id.*).

Cornett subsequently submitted a sworn statement on August 9, 1992, which further detailed the explosion which precipitated his application for a disability pension. (R. at 174). The Trustees reaffirmed their denial of Cornett's disability pension on September 9, 1994. (R. at 171).

After Cornett exhausted his administrative remedies, he commenced suit in this court to establish his entitlement to pension benefits. Cornett contends that the Trustees' denial of his disability benefits was arbitrary and capricious, not supported by substantial evidence, and an abuse of discretion. (Pl.'s Compl. ¶ 5).

Pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C), the case was referred to a Magistrate Judge for a Report and Recommendation ("Report"). Cross motions for summary judgment were filed in accordance with Fed. R.Civ.P. 56(c).[1] The Magistrate Judge's Report concluded that the Trustees abused their discretion when they denied Cornett's request for a disability pension. (Mag. Judge's Rep. & Rec. at 19). The Report stated that Cornett did not sustain a "physical injury." (*Id.* at 18). However, the Trustees' requirement that a pension claimant must suffer a physical injury in order to receive a disability pension was an abuse of discretion. (*Id.* at 19). Therefore, according to the Report, Cornett's psychological injuries were sufficient to constitute a "mine accident." (*Id.*).

As a result, the Report recommended that Cornett's motion for summary judgment be granted on the issues of whether he was involved in a mine accident and the reasonableness of the physical injury requirement. (*Id.*). The Report also recommended that Plaintiff's claim be remanded to the Trustees for additional evaluation to determine whether Cornett's psychological injuries were actually caused by the mine accident. (*Id.*).

The case is presently before this court on objections of the defendant to the Magistrate Judge's Report. This court, following a de

---

1. Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate if "there is no genuine issue as to material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Bailey v. Blue Cross & Blue Shield of Va.*, 67 F.3d 53, 56 (4th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1043, 134 L.Ed.2d 190 (1996).

novo review of the record, the Magistrate Judge's Report, and Defendant's Objections to Magistrate Judge's Report concludes that Cornett was involved in a "mine accident" as defined by the 1974 Pension Plan. The April 1991 explosion produced the required force or impact of a "mine accident." In addition, Cornett sustained the necessary physical harm as a result of this explosion. The Trustees abused their discretion by denying Cornett's application. As a result, he is entitled to receive disability benefits from the 1974 Pension Fund.

## III. FACTUAL BACKGROUND.

The plaintiff is Clyde Cornett, an individual who worked in the coal industry from 1967 through 1991. (R. at 337). Cornett has alleged that he was disabled in an April 1991 [2] mine explosion. (R. at 165). He worked as an electrician for the Clinchfield Coal Company when the explosion occurred. (R. at 82, 89, 167). As a result of this incident, Cornett filed a disability pension application with the Trustees on November 20, 1992. (R. at 159, 165–69).

The defendants in this case are the Trustees of the 1974 Pension Plan, one of several employee benefit trusts, collectively known as the UMWA Health and Retirement Funds. (Def.'s Ans. at 1). The 1974 Pension Trust, the individual trust responsible for processing Cornett's pension application, was established pursuant to the National Bituminous Coal Wage Agreement of 1974, in accordance with Section 302(c) of the Labor–Management Relations Act, 1947, 29 U.S.C. § 186(c).

The most comprehensive descriptions of the explosion giving rise to this litigation are statements that Cornett provided to various doctors and psychiatrists. Approximately two weeks after the explosion, Cornett sought the assistance of Robert Coates, a licensed professional counselor. (R. at 34). Cornett explained that he was involved in a mine accident in which a power center blew up. (Id.). Cornett reported that he was nervous, unable to concentrate, drive, sleep

or go outside as a result of the explosion. (Id.).

On May 7, 1991, Cornett was treated by Dr. John Bertuso. (R. at 74–76). Cornett informed Dr. Bertuso that the explosion frightened him and that, even though he worked the remainder of the week, he became very nervous when he had to replace a breaker on a piece of machinery. (Id.). Cornett also told Dr. Pierce Nelson, a psychiatrist, at a June 24, 1991, meeting that he inhaled some smoke and still tasted it. (R. at 82). In addition, during a psychological evaluation by Dr. Stephen Fulmer on September 27, 1991, Plaintiff described the incident by stating that "a power center blew up ... it was smoking ... [and it] scared me real bad." (R. at 86). He further stated to Dr. Nelson that he took a few days off from work to "recover" from the explosion. (Id.). A psychiatric report from Dr. Ashvin Patel also dated September 27, 1991, provided additional details of the explosion. According to that report:

> [Cornett] stated that he was working in the mine on April 3, 1991. He stated that there were several men moving some parts. He states all of a sudden his "breaker blew off" as he and another man were trying to fix this without turning off the power. The other guy was closer to the circuit breaker. He states that there was some smoke but they got away quickly. He went to get some fresh air and went back to finish their job. He took off a few days to get over his fears.

(R. at 89).

Cornett also complained of numerous physical consequences following the mine explosion. For example, less than three weeks after the explosion, he informed Dr. Emery H. Robinette that he had experienced chest pains since the explosion. (R. at 239, 242). On May 7, 1991, he told Dr. Bertuso that following the explosion he has experienced pain in his upper left extremity and left chest. (R. at 269). Cornett also informed Dr. Patel on September 27, 1991, that he has

---

**2.** The administrative record and the documents filed with the court contain several conflicting days during the first week of April 1991 as the date of the mine explosion. The exact date is not critical for purposes of this review.

suffered from insomnia, headaches, smothering, hyperventilation, and tremors. (R. at 87, 89, 90). In a June 2, 1993, letter, Dr. Nelson reported that his diagnosis of Cornett was that the mine explosion triggered back pains and resulted in limited bodily motion. (R. at 184).

The doctors and psychologists who examined and/or treated Cornett after the explosion agreed that he suffered from anxiety and depression. Dr. Fulmer and Dr. Patel diagnosed Cornett with a panic disorder; Dr. Nelson determined that Cornett suffered from a major depression; and Dr. James Cross reported that he suffered from post-traumatic stress syndrome. (R. at 83, 88, 91, and 322). These conclusions are consistent with Cornett's personal assessment. Cornett remarked to Dr. Nelson that he did not believe that he had any physical problems. (R. at 290). Similarly, he told Dr. Fulmer that anxiety was his only concern. (R. at 86).

Consistent with these medical diagnoses, the final order and compromise settlement regarding Cornett's workers' compensation claim against Clinchfield Coal Company described Cornet's disability as "an accidental psychiatric injury on or about April 3, 1991." (R. at 203). Cornett also was awarded a period of disability insurance benefits under the Social Security Act, 42 U.S.C. §§ 416(i) and 423, for "a severe anxiety disorder and depression" commencing on April 7, 1991. (R. at 197).

A consensus also exists regarding the cause of Cornett's disability. His anxiety and depression was triggered by the mine explosion. Dr. Nelson stated in a June 9, 1992, letter that Cornett's serious problems began with the mine explosion in April 1991. (R. at 105). Dr. Fulmer concluded that Cornett's panic disorder was markedly aggravated by the mining accident. (R. at 86). In addition, the Administrative Law Judge stated that while Cornett has had a history of psychiatric treatment as early as 1974, he sought psychiatric care in June 1991 because his symptoms were exacerbated after a mine explosion in April 1991. (R. at 128).

Cornett's disability pension application was denied because the Trustees concluded that he was not involved in a "mine accident."

(R. at 2). Specifically, they opined that the explosion lacked the required force or impact as defined by regulations which interpret the Plan. (R. at 2, 180). In addition, the claim was denied because the Trustees concluded that Cornett sustained no physical injury and, therefore, was not entitled to a disability pension. (*Id.*) Following an administrative hearing, at which the decision to deny Cornett's application was affirmed, Cornett's legal counsel filed a letter with the Trustees objecting to the hearing officer's factual account of the explosion. (R. at 177). According to the January 17, 1994 letter, Cornett testified at the hearing that the "physical impact from the explosion knocked him backwards and that flames actually singed some of his clothing." (*Id.*). The letter also stated that he breathed smoke and gas and suffered an irritation to his eyes as a result of the mine explosion. (*Id.*).

Thereafter, Cornett submitted a sworn statement dated July 1994 which corroborated the details of his attorney's letter. (R. at 174). The affidavit stated that factual inaccuracies existed in the hearing officer's decision. (*Id.*). Cornett described the explosion in the following manner:

> On that date, a power center blew up. The resulting force and smoke overcame a co-worker, Branson Whited and knocked me backwards. I caught myself from falling by grabbing onto the "ribb" of the mine. I breathed smoke and gas that resulted from the explosion.

(*Id.*). The Trustees' previous denial of the claim was affirmed upon reconsideration on September 9, 1994. (R. at 171).

## IV. STANDARD OF REVIEW.

The standard of review of a decision made by Trustees of an ERISA benefit plan is ordinarily de novo. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80, 95 (1989); *Richards v. United Mine Workers Health and Retirement Fund,* 895 F.2d 133, 135 (4th Cir.1990). However, where the plan gives the Trustees discretion to determine benefit eligibility or to construe plan terms, the standard of review is whether the Trustees

abused that discretion.[3] *Firestone Tire & Rubber Co.*, 489 U.S. at 111, 109 S.Ct. at 954, 103 L.Ed.2d at 92–93.

■ Article VIII § A of the 1974 Pension Plan expressly vests the Trustees with "full and final" authority to determine all issues concerning eligibility for benefits from the plan. Therefore, the court's review is limited to determining whether the Trustees abused their discretion. *Hale v. Trustees of the United Mine Workers Health & Retirement Funds*, 23 F.3d 899, 901 (4th Cir.1994); *Lockhart*, 5 F.3d at 77; *Boyd v. Trustees of the United Mine Workers Health & Retirement Funds*, 873 F.2d 57, 59 (4th Cir.1989). Under the abuse of discretion standard articulated in *Bruch*, the Fourth Circuit has held that a Trustees challenged denial of benefits should not be disturbed if reasonable. *de Nobel v. Vitro Corp.*, 885 F.2d 1180, 1187–88 (4th Cir.1989).

## V. DISCUSSION.

■ The award of benefits under an ERISA plan is governed in the first instance by the language of the plan itself. *Lockhart*, 5 F.3d at 78; *see also* 29 U.S.C.A. § 1104(a)(1)(D) (West 1985 & Supp.1993) (trustees must discharge duties in accordance with documents and instruments governing the plan). If the denial of benefits is "contrary to the clear language of the [p]lan, the decision will constitute an abuse of discretion." *de Nobel*, 885 F.2d at 1188. The eligibility requirements to obtain a disability pension under the 1974 Pension Plan are stated in Article II.C., which provides in pertinent part:

A participant who (a) has at least 10 years of signatory service prior to retirement, and (b) becomes totally disabled as a result of a **mine accident** ... shall, upon retirement be eligible for a pension while so disabled. A participant shall be considered to be totally disabled only if by reason of such accident such Participant is subsequently determined to be eligible for

Social Security Disability Insurance Benefits under Title II of the Social Security Act or its successor.

(emphasis added).

In the instant case, Cornett has undisputedly been employed by a signatory employer to the National Bituminous Coal Wage Agreement for the statutorily prescribed time. In addition, the Trustees do not contest Cornett's qualifications for total disability. Under the Plan, the standard for that determination is hinged on the claimant's qualification for Social Security disability benefits, and Cornett qualified for those benefits. *See Boyd*, 873 F.2d at 59 (noting that the receipt of a Social Security disability award "conclusively establishes the medical disability of the pension applicant") (citation omitted). The issue before the court is whether Cornett was disabled as a result of a "mine accident."

The 1974 Pension Plan does not define the term "mine accident." However, Article VIII § B(1) of the Plan authorizes the Trustees to "promulgate rules and regulations to implement this Plan, and [such] ... shall be binding upon all persons dealing with ... [and] claiming benefits under this Plan." Pursuant to this authorization, the Trustees adopted a series of interpretive guidelines referred to as "Questions and Answers" ("Q & A's") to assist them in uniformly and consistently applying the provisions of the Plan to individual situations.

The court must therefore look to these rules and regulations to determine if the Trustees abused their discretion by concluding that Cornett's disability did not result from a mine accident. Q & A 252 requires that the following three characteristics be present in order to constitute a "mine accident":

(1) Unexpectedness: The disability must have been unlooked for and unforeseen.

(2) Definiteness: The disability must be traceable to a definite time, place and occasion which occurred within the course of

---

**3.** The "abuse of discretion" standard of review may be the same as the pre-*Firestone* "arbitrary and capricious" standard. *Lockhart v. United Mine Workers of America 1974 Pension Trust*, 5 F.3d 74, 77 n. 5 (4th Cir.1993) (noting that the

Fourth Circuit had utilized the "arbitrary and capricious" standard after *Firestone*, but declining to "resolve the differences, if any, between the two standards.").

the mine worker's employment. A progressive disease does not meet this test and therefore cannot be a disability that resulted from a mine accident.

(3) Force or impact: The disability must have been caused by the exertion or impact of some external physical force or object against the body or by the exertion or impact of the body against some external physical object; i.e. not simply as a result of the mine worker's own physical condition.

The term "mine accident" is also defined in the summary plan descriptions [4] for the 1974 Pension Plan as "an accident involving a physical injury sustained while working in a classified job for a signatory employer."

The Trustees interpreted these regulations and concluded that Cornett met the unexpectedness and definiteness requirement, but the April 1991 mine explosion did not constitute sufficient force or impact as applied to Cornett. (R. at 2, 180).

■ Cornett contends that he was injured in a mine accident that involved force or impact against his body. Cornett argues that the power center explosion represented a "force or impact" against his body. Cornett also claims that he breathed smoke from the explosion which is sufficient to establish a mine accident. He asserts that the Trustees' denial of his application was an abuse of discretion.

The court agrees with Cornett. In April 1991, a power center exploded in the mine where Cornett was working. As a result of this explosion, Cornett was forced to temporarily leave the mine to catch his breath. Cornett has consistently stated that he inhaled some smoke that was present in the mine after the explosion.

Cornett has also offered a sworn statement detailing the facts regarding the 1991 explosion. According to the affidavit, the impact of the explosion knocked Cornett backwards and he only prevented himself from falling by grabbing the "ribb" of the mine. (Ex. A at 174). The affidavit also stated that he breathed smoke and gas from the explosion. (*Id.*).

The Trustees apparently concluded that this statement submitted several years after the explosion was not as reliable as Cornett's account of the incident soon after it occurred. This credibility determination is certainly within the Trustees' power as fact finder. *See Sheppard & Enoch Pratt Hosp. v. Travelers Ins. Co.*, 32 F.3d 120, 125 (4th Cir.1994); *Berry v. Ciba–Geigy Corp.*, 761 F.2d 1003, 1006 (4th Cir.1985). However, the undisputed facts are sufficient to constitute the occurrence of a mine accident which involved "force or impact" as applied to Cornett. The rules and regulations developed by the Trustees clearly state that the "force or impact" requirement is satisfied when the claimant's injuries are triggered by some external physical force.[5] Giving these words their ordinary meaning, we find it impossible to say that the explosion did not involve "force or impact." A fair reading of Q & A 252 contains within its definition the impact of a power center explosion. Therefore, the court concludes that the Trustees' decision that Cornett was not injured in a mine accident involving force or impact was not reasonable and was an abuse of discretion.

The Q & A's further support Cornett's position. Q & A 252 details several examples of circumstances in which a miner would be deemed disabled as a result of a mine accident. Relevant to the instant case is the scenario where a "miner inhales a poisonous gas." While Cornett has not alleged that he inhaled "poisonous gas," he has unwaveringly complained of smoke inhalation. Cornett promptly informed Drs. Nelson, Fulmer, and Patel that he inhaled smoke in the mine

4. A summary plan description is required under 29 U.S.C. § 1022 and 29 C.F.R. §§ 2520.102–2 and 2520.102–36 and must contain sufficient information to apprise beneficiaries of their rights and obligations under the plan. *Hendricks v. Central Reserve Life Ins. Co.*, 39 F.3d 507 (4th Cir.1994).

5. The court is mindful that Cornett's psychological reaction to the explosion is not extraordinary. In *Bolling v. Bowen*, 682 F.Supp. 864 (W.D.Va. 1988), this court noted that a disability caused by psychological overlay is compensable. In fact, the court observed that the development of a psychological condition is "common among coal miners." *Id.* at 867.

following the power center explosion. (R. at 82, 86, 89).

In response, the Trustees have alleged that no contemporaneous evidence exists to establish the presence of smoke in the mine following the explosion. The Trustees rely on Cornett's pension application which summarily states his injury from the "power center blow up" was "post traumatic stress." (R. at 165). The Trustees also offer the employer's initial accident report which contains essentially the identical three-word summary of the explosion and Cornett's injury. (R. at 14). They also rely upon the fact that Cornett's factual account of the explosion Cornett's made to Drs. Fulmer, Patel, and Nelson was nearly three months after the incident.

The court finds that the facts surrounding the April 1991 mine explosion are materially similar to the example outlined in Q & A 252. The fact that the Trustees offered a miner inhaling gas as an example of a mine accident is instructive. It is compelling evidence that the predicament Cornett found himself in following the explosion was intended to be a mine accident under the Plan. The Q & A's indicate that "force or impact" does not require a miner to be overpowered to the ground.

The Trustees second argument is that even if Cornett's injury involved force or impact, a psychological injury on its own, without a link to physical harm, is not sufficient to obtain a disability pension under the 1974 Pension Plan. They assert that insufficient evidence exists to establish that Cornett sustained a physical injury as required by the Plan. In opposition, Cornett contends that the Trustees physical injury requirement is not a reasonable interpretation and is therefore an abuse of their discretion. Cornett submits that the drafters of the Plan did not intend to limit pension benefits to only those miners whose injuries are physical in nature. According to Cornett, a psychological disability proximately caused by a mine accident is sufficient to bring a miner within the requirements of the Plan.

The threshold issue before the court is whether the harm sustained by Cornett from the explosion, which was primarily psychological, was sufficient to constitute a "mine accident." The court concludes that the impact and physical symptoms from the explosion as well as the ensuing psychological injuries were sufficient to establish a "mine accident."[6]

In order to satisfy Article II.C. of the Plan, which requires a claimant be "totally disabled as a result of a mine accident," the applicant must only show that a mining accident was "substantially responsible" for the disability. *Horn v. Mullins*, 498 F.Supp. 1197, 1200 (W.D.Va.1980), *aff'd*, 650 F.2d 35 (4th Cir. 1981). This court has consistently held that a disability pension is available under the 1974 Pension Plan when a claimant's physical harm is insignificant and the primary disabling injury is psychological.

In *Church v. Huge*, 500 F.Supp. 133 (W.D.Va.1980), for example, the plaintiff sought pension benefits from the 1950 Pension Plan. The claimant's disability was psychological neurosis. *Id.* at 134. His mental impairment resulted from several minor back injuries sustained in a series of mining accidents. *Id.* at 136. The Trustees denied Church's pension claim purportedly because his disabling injury was not the result of a mine injury. *Id.* at 135. Despite an insignificant physical injury, the court reversed the Trustees and concluded that the claimant was entitled to receive pension benefits. *Id.*

The requirement of total disability resulting from a mine accident means that "the mine accident be a substantial cause of disability." *Id.* (citing *Horn*, 498 F.Supp. at 1197). The court in *Church* noted that "[i]n the context of the present case involving psychiatric injury, ... the court will find plaintiff's disability to have been proximately caused or substantially caused by a mine accident where the psychiatric injury arises out of such an accident." *Id.*

---

**6.** Since the court has determined that Cornett sustained physical harm, today's ruling makes it unnecessary to reach the issue of whether the Trustees' interpretation of the 1974 Pension Plan which requires a physical injury in order to receive disability benefits is arbitrary and an abuse of discretion.

The Fourth Circuit's holding in *Robertson v. Connors*, 848 F.2d 472 (4th Cir.1988), which is based on analogous facts to the case at bar, provides additional guidance. The claimant in *Robertson* challenged the determination of the Trustees that he was not entitled to disability benefits from the 1974 Pension Fund. The claimant had injured his arm, shoulder, and neck when a shuttle car struck a roof bolt. *Id.* at 473. The medical evidence overwhelmingly indicated that the claimant did not have a substantial physical problem as a result of the mine accident. *Id.* at 475. The essence of the claimant's disability was a psychiatric condition of long standing duration which was triggered by the mine accident. *Id.* at 474.

The Trustees concluded that since the claimant's physical injury was only inconsequential, the mine accident was not the cause of the claimant's disability. *Id.* The Fourth Circuit, however, citing *Church* and *Mullins,* reiterated that a claimant must only show that the "mine injury proximately caused or was substantially responsible for [the] disability" and awarded benefits accordingly. *Id.* at 475.

In *Robertson,* the evidence clearly established that the claimant's disability resulted from the combination of the minor neck injury and the depressive syndrome related to it. *Id.* The court opined that:

> The only reasonable interpretation of the requirement that total disability be "the result of a mine accident," therefore, is that it requires total disability to have been proximately caused by the mine accident. That is, if the plaintiff was injured in a mine accident and that injury, whether in combination with a previous or subsequent condition, is substantially responsible for plaintiff's inability to perform his job and for whatever medical and vocational reasons he is unable to perform an alternative job, then his total disability results from a mine accident. *Id.*

The Fourth Circuit has noted that "*Robertson* in effect sets the bounds on the range of discretion that the Pension Plan confers on the Trustees to deny claims." *Boyd,* 873 F.2d at 59. The court in *Boyd* rejected the Trustees' determination that a slight blow to the neck that resulted in an emotional impairment was not a mine accident. To the contrary, the Fourth Circuit stated that the disability resulted from a mine accident "whatever the actual physical injury." *Id.* at 60. The court noted that it was inappropriate for the Trustees to concentrate solely upon the direct physical injury caused by the mine accident. Instead, where the claimant's disability stems from a preexisting condition or results from a combination of conditions, the entire range of ailments must be considered proximately caused by the accident for pension purposes. *Id.*

The facts of the instant case are materially similar to those in *Robertson, Church,* and *Boyd.* In the case at bar, a power center exploded in a mine in which the plaintiff was working. As the court has previously discussed, the explosion constituted a "mine accident" as defined by the Q & A's utilized to interpret the Plan. Cornett has consistently stated that he inhaled smoke, experienced physical symptoms such as chest and back pain following the explosion, and ultimately became anxious and depressed. The uncontroverted medical evidence indicates that Cornett's inability to work was caused by the mental trauma which was triggered by the mine explosion. (R. at 86, 105, 128). This is sufficient to satisfy the Trustees' requirement of physical injury.

While Cornett's physical harm was extremely minor, no legal requirements mandate that a claimant's physical injury be great. In addition, although Cornett had a history of psychiatric treatment, the Plan does not require the mine accident to be the sole cause of the disability. *Horn,* 498 F.Supp. at 1200; *Lambert v. Connors,* 699 F.Supp. 1217, 1219 (W.D.Va.1988) (noting that "[t]he Trustees' own guidelines provide that the mine accident may result in only a minor injury in the total disability"). Instead, to be entitled to a disability pension, Cornett was only required to show that the mine accident "proximately caused or was substantially responsible for his disability." *Robertson,* 848 F.2d at 475. The court concludes that Cornett has met this burden. Therefore, the Trustees determination that Cornett was not involved in a mine accident cannot be supported by the record and is an abuse of their discretion.

### VI. CONCLUSION.

There is not substantial evidence to support the Trustees' decision that Cornett was not involved in a "mine accident." The occurrence of a mine explosion is sufficient to constitute "force or impact" as required by the Q & A's promulgated by the Trustees. Cornett also sustained sufficient physical symptoms following the explosion. In addition, the medical evidence conclusively establishes that Cornett's inability to work was triggered by the mine explosion. Under the Trustees' own interpretation of the Plan and the applicable case law, Cornett is eligible for disability pension benefits. Accordingly, the court overrules the objections to the Magistrate Judge's Report & Recommendation insofar as the result is concerned, and affirms the decision of the Magistrate Judge on other grounds. An order will be entered granting judgment to the plaintiff.

### ORDER

For the reasons set forth in the Memorandum Opinion entered this day, it is hereby ORDERED and ADJUDGED that the plaintiff's motion for summary judgment is hereby GRANTED, and the defendant's motion for summary judgment is hereby DENIED and this case is stricken from the docket.

The Clerk is directed to send copies of this Order to the counsel of record.