Timothy J. BOGGS, Plaintiff,

v.

TRUSTEES OF THE UNITED MINE
WORKERS HEALTH AND RETIRE-
MENT FUNDS, Defendants.

Civil Action No. 95–0138–B.

United States District Court,
W.D. Virginia,
Big Stone Gap Division.

Sept. 26, 1996.

Roger W. Rutherford, Norton, VA, for
Plaintiff.

Charlie R. Jessee, Abingdon, VA, Glenda
S. Finch, Jo Ann Petroziello, Washington,
DC, for Defendants.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, Senior District
Judge.

### I. INTRODUCTION.

Plaintiff Timothy J. Boggs ("Boggs") filed
this action challenging the final decision of
the Trustees of the United Mine Workers of
America 1974 Pension Plan ("Plan") denying
his claim for disability pension benefits.
This court has jurisdiction over the Trustees
decision pursuant to the Employee Retire-
ment Income Security Act ("ERISA"), specif-
ically 29 U.S.C. § 1132(a).

### II. PROCEDURAL HISTORY.

Boggs applied to the Trustees for a disabil-
ity pension and claimed that he was totally
disabled as a result of a "mine accident."
(Record "R." at 258). His application was
denied on March 15, 1994. (R. at 67–70).
According to the Trustees, Boggs was ineligi-
ble to receive pension benefits because his
disability was not caused by a mine accident.
(Id.). Boggs submitted additional medical
evidence and was granted a hearing. (R. 51–
66, 269). His claim was denied again on
September 20, 1994. (R. at 45–49). Boggs'
application was evaluated for a third time
and the Trustees reaffirmed their decision on
January 18, 1995. (R. at 1–6).

After Boggs exhausted his administrative
remedies, he commenced suit in this court to
establish his entitlement to pension benefits.
Boggs contends that the Trustees' denial of
his disability benefits was arbitrary and ca-
pricious. (Pl.'s Compl. at 4). The case is
currently before the court on cross motions
for summary judgment pursuant to Fed.
R.Civ.P. 56(c).[1]

---

**1.** Rule 56(c) of the Federal Rules of Civil Proce-
dure provides that summary judgment is appro-
priate if "there is no genuine issue as to material
fact and ... the moving party is entitled to judg-

ment as a matter of law." Fed.R.Civ.P. 56(c);
see Bailey v. Blue Cross & Blue Shield of Va., 67
F.3d 53, 56 (4th Cir.1995), cert. denied, —— U.S.
——, 116 S.Ct. 1043, 134 L.Ed.2d 190 (1996).

## III. FACTUAL BACKGROUND

The plaintiff is Timothy J. Boggs, a 37 year-old individual who worked in the coal industry from 1977 through 1992. (R. at 260). Boggs has alleged that he was disabled in a December 31, 1987, mine accident. (R. at 257). At the time of this accident, Boggs worked as a scoop and car operator for the Westmoreland Coal Company. (R. at 259).

The defendants in this case are the Trustees of the 1974 Pension Trust, one of several employee benefit trusts collectively known as the UMWA Health and Retirement Funds. (Def.'s Ans. at 1). The 1974 Pension Trust, the individual trust responsible for processing Boggs' pension application, was established pursuant to the National Bituminous Coal Wage Agreement of 1974, in accordance with Section 302(c) of the Labor–Management Relations Act, 1947, 29 U.S.C. § 186(c). (Def.'s Mot. Summ. J. at 2).

Boggs has sustained numerous back injuries from both work and non-work related accidents. Since these back ailments precipitated this litigation and are essential to the court's decision, it is necessary to chronologically detail Boggs' lengthy back problems. Boggs first injured his back in an April 4, 1979, non-work related automobile accident when his truck overturned twice. (R. at 19, 205–08). X-rays taken on the day of the accident revealed a compression fracture of the Li vertebral body. (*Id.*).

On January 4, 1982, Boggs injured his back while twisting to avoid a roof plate in a mine accident. (R. at 9). Dr. James W. Wolfe concluded that Boggs sustained a lower back spasm bilaterally from the Li through L5 area. (R. at 21). Boggs was instructed to stay off his feet for five days and consequently missed some time from work. (*Id.*). He returned to work on January 12, 1982, after his lower back strain improved. (R. at 22).

On May 3, 1983, Boggs injured his back laying steel in the mines. (R. at 14). Despite suffering from lower back pain, Boggs apparently did not seek immediate medical attention for this injury. However, he complained of back pain to Dr. Wolfe on July 11, 1983. (R. at 3). Dr. Wolfe concluded that Boggs was experiencing back spasms, particularly on the left side of the back. (*Id.*). He noted that Boggs had a slight scoliosis when he was standing which was probably a result of the back spasms. (*Id.*). Similarly, on October 18, 1984, Boggs complained to Dr. Bryston Winegar that he was experiencing acute back pains. (*Id.*). The doctor diagnosed Boggs with a severe paravertebral spasm with tenderness and restricted flexion. (*Id.*).

On March 29, 1985, Boggs once again injured his back in an automobile accident. (R. at 57–59, 163, 209–211). The jeep Boggs was driving overturned and he was pinned under the vehicle. (*Id.*). X-rays of Boggs' lumbar and dorsal spine taken on April 4, 1985, showed a compression deformity of the L1 vertebral body. (R. 59, 209). Dr. David L. Cox diagnosed Boggs with lumbosacral strain. (R. at 212, 215).

On December 31, 1987, Boggs suffered another back injury in a mine accident. (R. at 74–75, 78–80, 116, 146–47). He experienced immediate back pain after attempting to throw a piece of timber. (R. at 75). X-rays taken on January 4, 1988, displayed evidence of a past compression fracture of the L1 vertebral body as well as a slight midline L5–S1 bulging disk. (R. at 147, 152, 154–57, 159). Dr. Kenneth D. Kiser diagnosed Boggs with a lower back strain. (R at 78–79). Dr. Kiser noted that Boggs had a compression fracture of the L1 area which was caused by an previous motor vehicle accident. (R. at 78–79, 148, 154, 160).

On February 24, 1988, Boggs was treated by Dr. Neal A. Jewell. Boggs informed Dr. Jewell that he had injured his back in a 1979 car accident but has had "no trouble with that [injury] at all." (R. at 116). Dr. Jewell diagnosed Boggs with an acute lumbar sprain. (R. at 146–47). In addition, a CT Scan revealed a slight midline L5–S1 bulging disc. (*Id.*). Boggs was off work from January 1, 1988, through April 11, 1988. (R. at 116). Boggs reported that his back condition had improved, and he returned to work without restriction on April 12, 1988. (R. at 116, 144).

On May 16, 1988, Boggs was involved in yet another mine accident. He injured his back while shoveling around a tailpipe in a mine. (R. at 134, 138–39, 143, 190). As Boggs turned his body, he suddenly experienced a severe lower back pain which radiated downward to his right leg and heel. (R. at 190). On May 17, 1988, Dr. Kiser diagnosed Boggs with an exacerbation of his lower back pain, a L5–S1 bulging disc, and an old anterior compression of the L1 area. (R. at 134, 138, 142–43, 190). During a follow-up examination by Dr. Kiser on May 20, 1988, Boggs stated that his lower back pain had subsided, and he returned to work. (R. at 135, 137, 142–43).

Boggs was unable to work for several months beginning on September 1, 1988, due to spasms and aching in his back. (R. at 116). Following complaints of lower back pains, Boggs received an MRI examination on October 27, 1988. (Id.). The test revealed a remote compression fracture of the L1 vertebral body and a mild annular bulge of the L5–S1 disc. (R. at 116, 118, 120). The MRI also revealed degenerative changes in his lumbar without disc herniation. (R. at 116). A second MRI taken on October 31, 1988, provided similar results. (R. at 126, 194).

On December 13, 1988, William A. McIlwain examined Boggs and determined that he was able to return to full work activities. (R. at 115). Approximately one week after returning to the job, Boggs was laid off from the Westmoreland Coal Company because he was unable to perform his duties. (R. at 46, 91). In January 1989, Boggs began stints of employment in the construction and mining industries. (R. at 49, 68, 221). Boggs worked until October 1992 but continued to have difficulties with his back pain. (R. at 69).

Dr. Kiser noted during an April 3, 1989, medical examination that Boggs did not have "any significant exacerbations of pain since [his] return to work in December [1988]."

(R. at 200). However, on May 3, 1989, Boggs reported to Dr. Charles McCormick that he was experiencing "excruciating" lower back pains. (R. at 38). Boggs' final attempt at employment in 1992 lasted only four days as he was forced to quit because of severe back pains. (R. at 47).

On November 30, 1992, Boggs filed an application for Social Security Disability Insurance Benefits ("SSDI"). (R. at 91–100). His application was prompted by Dr. Cox's advice that he would never again be able to work in the mines due to his back. (R. at 94). Boggs listed his disabling condition as follows:

> Old back injury 4/4/1979—Automobile accident in 3/30/1984[2] – > head injury – > dizziness, Severe headache + short term memory loss. Pain in leg related to back problem. Nervous + depressed.

(R. at 91). Boggs reported that his disabling condition began to bother him on April 4, 1979, but that he continued working until October 9, 1991.[3] (Id.).

On July 21, 1993, an Administrative Law Judge ("ALJ") determined that Boggs was disabled effective October 9, 1992. (R. at 109). The ALJ made the following determination regarding the causes of Boggs' disability:

> The medical evidence of record establishes that the claimant has severe chronic low back pain secondary to compression fracture of L–1, dysthymia, anxiety disorder, and mild mental retardation.

(Id.).

Boggs' pension file also contains information regarding his history of psychological problems. Boggs informed Dr. McCormick on August 11 and 22, 1988, that he felt depressed. (R. at 36). He told the doctor that he had never been depressed in the past. (Id.) Similarly, on April 8, 1991, Boggs told Dr. Winegar that he was having some problems with depression and anxiety. (R. at 39).

---

**2.** As the Trustees point out, Boggs' citation apparently refers to his automobile accident in March 1985.

**3.** Inconsistencies also exist regarding the date that Boggs ultimately stopped working. The record sets this date as either late 1991 or 1992. (R. at 69, 91). The exact date is not critical for purposes of this review.

On April 9, 1993, Dr. B. Wayne Lanthorn administered a mental status examination and intellectual assessment. (R. at 223–26). Dr. Lanthorn concluded that Boggs had late onset dysthymia, anxiety disorder, and mild mental retardation. (R. at 225). Dr. Lanthorn linked Boggs' mental health problems to a "variety of physical problems," "on-going physical pain," and "unemployment." (R. at 225).

On August 23, 1993, Boggs filed an application with the Trustees for disability pension benefits from the 1974 Pension Plan. (R. at 257–62). The Trustees denied Boggs' application on three occasions, purportedly because he had not established that his disabling condition was caused by a mine accident. (R. at 49, 67).

## IV. STANDARD OF REVIEW.

■ The standard of review of a decision made by Trustees of an ERISA benefit plan is ordinarily de novo. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80 (1989); *Richards v. United Mine Workers of America Health and Retirement Fund,* 895 F.2d 133, 135 (4th Cir.1990). However, where the Plan gives the Trustees discretion to determine benefit eligibility or to construe plan terms, the standard of review is whether the Trustees abused that discretion.[4] *Firestone Tire & Rubber Co.,* 489 U.S. at 111, 109 S.Ct. at 954–55. Article VIII § A of the 1974 Pension Plan expressly vests the Trustees' with "full and final" authority to determine all issues concerning eligibility for benefits from the plan. Therefore, the court's review is limited to determining whether the Trustees abused their discretion. *Hale v. Trustees of the United Mine Workers Health & Retirement Funds,* 23 F.3d 899, 901 (4th Cir.1994); *Lockhart,* 5 F.3d at 77; *Boyd v. Trustees of the United Mine Workers Health & Retirement Funds,* 873 F.2d at 57, 59 (4th Cir. 1989). Under the abuse of discretion standard articulated in *Bruch,* the Fourth Circuit has held that a Trustees' challenged denial of

benefits should not be disturbed if reasonable. *de Nobel v. Vitro Corp.,* 885 F.2d 1180, 1187–88 (4th Cir.1989).

## V. DISCUSSION.

The eligibility requirements to obtain a disability pension under the 1974 Pension Plan are stated in Article II. C., which provides in pertinent part:

> A participant who (a) has at least 10 years of signatory service prior to retirement, and (b) becomes totally disabled **as a result of a mine accident**...shall, upon retirement be eligible for a pension while so disabled. A participant shall be considered to be totally disabled only if by reason of such accident such Participant is subsequently determined to be eligible for Social Security Disability Insurance Benefits under Title II of the Social Security Act or its successor.

(emphasis added).

In the instant case, Boggs has undisputedly been employed by a signatory employer for the statutorily prescribed time. In addition, the Trustees do not contest Boggs' qualifications for total disability. Under the Plan, the standard for that determination is hinged on qualification for SSDI, and Boggs qualified for those benefits. *See Boyd,* 873 F.2d at 59 (noting that the receipt of a Social Security disability award "conclusively establishes the medical disability of the pension applicant.") (citation omitted). The Trustees also concede that Boggs has been involved in mine accidents in 1982, 1983, 1987, and 1988. (Def.'s Mot. Summ. J. at 9).

■ Thus, the issue before the court is whether Boggs' disability was the result of a mine accident. The Trustees argue that no causal connection exists between Boggs' injury and his mine accidents. They contend his disabling back injury is the sole result of a non-work related auto accident.

In support of their argument, the Trustees rely on the ALJ's decision to grant Boggs

---

4. The "abuse of discretion" standard of review may be the same as the *pre-Firestone* "arbitrary and capricious" standard. *See Lockhart v. United Mine Workers of America 1974 Pension Trust,* 5 F.3d 74,77 n. 5 (4th Cir.1993) (noting that the

Fourth Circuit had utilized the "arbitrary and capricious" standard after *Firestone,* but declining to "resolve the differences, if any, between the two standards.").

SSDI benefits which listed his disability, in part, as a compressive fracture of the L1 vertebral body. The Trustees point out that this injury has been linked medically to Boggs' 1979 automobile accident. In contrast, they note that the December 31, 1987, mine accident injured Boggs' L5–S1 back area and that ailment was not listed by the ALJ as disabling. The Trustees also rely on evidence that Boggs successfully returned to work after each mine accident and that he was employed for several years following his allegedly disabling mine accident. In addition, the Trustees argue that the onset date for SSDI was more than four years after his final mining accident which they claim suggests that the disability was not caused by a mine accident. Finally, the Trustees assert that no medical evidence exists linking Boggs' psychological disorders with his mine accidents.

In opposition, Boggs contends that his December 31, 1987, mine accident, while not the sole cause of his disability, aggravated his former back injuries and resulted in total disability from both psychological and physical impairments. Boggs asserts that the instant case is controlled by this court's decision in *Lambert v. Connors*, 699 F.Supp. 1217 (W.D.Va.1988). Boggs notes that according to *Lambert*, if a mine accident aggravates or combines with a pre-existing condition to cause a disability, the mine worker is considered disabled "as a result of a mine accident" for purposes of the Plan.

It is well-established law that a miner is disabled "as a result of a mine accident" if the disability is

> proximately caused by the mine accident. That is, if the plaintiff was injured in a mine accident and that injury, whether in connection with a previous or subsequent condition, is substantially responsible for plaintiff's inability to perform his job and for whatever medical or vocational reasons he is unable to perform an alternative job, then his total disability results from a mine accident.

*Robertson v. Connors*, 848 F.2d 472, 475 (4th Cir.1988) (quoting *Horn v. Mullins*, 498 F.Supp. 1197, 1200 (W.D.Va.1980), *aff'd*, 650 F.2d 35 (4th Cir.1981)).

Courts have had several opportunities to develop the concept of proximate cause as it relates to mine accidents under the Plan. In *Church v. Huge*, 500 F.Supp. 133 (W.D.Va. 1980), for example, the plaintiff sought pension benefits because of a psychological neurosis. *Id.* at 134. This mental impairment was the result of several insignificant back injuries sustained in a series of mining accidents. *Id.* at 136. The Trustees denied the pension claim because they concluded that Church's disabling injury was not the result of a mine accident. *Id.* at 135. Instead, they reasoned that the mine accidents were so insignificant that they were not the proximate cause of the disabling injury. *Id.*

The court, however, reversed the Trustees and concluded that the claimant was entitled to receive pension benefits. *Id.* The court noted that a publication used by the Trustees for guidance in applying the terms of the Plan addressed the specific issue raised in the case. The publication stated as follows:

> There will be a limited number of cases in which the applicant will establish total disability and the occurrence of a mine accident, but it will appear that the mine accident is only partially responsible for the disability. In these cases, the disability shall be deemed to be the result of a mine accident in accordance with the principle of "proximate cause," as explained below:
>
> (a) If the mine accident aggravated a pre-existing condition to the extent that the person becomes totally disabled or if the mine accident occurred after a non-mine related injury and the two injuries combined resulted in total disability, the person shall be deemed to be totally disabled as a result of the mine accident. This rule applies even if evidence establishes that the mine related condition is only a small percentage of the total disability ...

*Id.* at 137.

This court's decision in *Lambert*, 699 F.Supp. at 1217, is equally instructive. *Lambert* involved a mine worker whose non-mine related psychiatric condition was compounded by a subsequent mine-related physical injury. The Trustees denied the award of pension benefits because of an alleged failure

to establish a causal connection between the mine accident and disability. *Id.* at 1218. This court held that the Trustees denial was not supported by substantial evidence. *Id.* According to regulations promulgated by the Trustees, when a mine accident combines with a pre-existing condition or a prior injury and causes total disability, the mine worker is considered disabled as a result of a mine accident. *Id.* at 1219.

The Fourth Circuit adopted this rationale in *Robertson,* 848 F.2d at 472. In *Robertson,* the Trustees reasoned that no causal link existed between a mine injury and a disability where the miner exhibited physical and psychiatric ailments before the mine accident and suffered no lasting physical injury as a result of the mine accident. *Id.* at 474. The court held that a disability will be the result of a mine accident so long as the mine accident proximately caused or is substantially responsible for the claimant's inability to work. *Id.* at 475.

The facts in this case are materially similar to those in *Church, Lambert,* and *Robertson.* Boggs initially injured his back in a 1979 car accident. That injury certainly was not disabling by itself. Boggs successfully worked in the mines for a signatory employer for nearly a decade after that accident. His manifestation of pain from the 1979 car accident did not prevent Boggs from working until he reinjured his back in a 1982 mine accident. Once Boggs returned to work, his back condition did not require him to miss additional time from the job until he was injured in another mine accident.

Since the 1979 auto accident was not the sole disabling event, this court must determine what contributing factors played a substantial role in Boggs' disability. The ALJ determined that Boggs' disability was partially caused by "chronic low back pain." The record contains numerous medical reports that indicate each mine accident exacerbated Boggs' prior back injury and caused him to experience pain in his lower back. For example, he suffered lower back spasms as a result of his 1982 mine accident. (R. at 21). In 1983, he complained of lower back pains after being involved a mine accident. (R. at 14, 21). Boggs' 1987 mine injury from

throwing timbers also caused him acute pain in his lower back. (R. at 147). While he eventually returned to work, the back pain "continued to grow worse" following that mine accident. (R. at 224). In addition, Boggs experienced lower back pain after he was injured shoveling around a tailpipe in a mine in 1988. (R. at 134).

The Trustees determined, however, that Boggs' chronic low back pain was not substantially caused by any of these mine accidents. Instead, the Trustees concluded that the back pain which disabled Boggs was the exclusive result of his 1979 automobile accident. This conclusion can not be supported by the record.

The Fourth Circuit has cautioned that it is beyond the responsibility of the Trustees to parse medical evidence and attempt to weigh the seriousness of various symptoms or injuries. *Robertson,* 848 F.2d at 475–76. When medical evidence establishes that a mine accident played a substantial role in creating the disabling condition, the claimant is disabled as a result of a mine accident. *Id.* The Fourth Circuit's admonition is germane in this case. The medical evidence linked Boggs' lower back pain with his mine accidents. In addition, the ALJ found that Boggs' chronic low back pain was disabling. The Trustees, however, determined that no causal connection existed between Boggs' disabling back pain and the mine accidents.

The Trustees argue that Boggs has acknowledged that his disability originated from an old automobile accident. (R. at 268). That statement does not alter his entitlement to benefits under the Plan. This court has noted that the Trustees must accept a man working in the mines with all his physical and mental limitations. *Lambert,* 699 F.Supp. at 1219. Accordingly, the requirements for obtaining a disability pension under the Plan do not change simply because Boggs' initial back injury was sustained in a non-work related accident.

The Trustees also rely on the ALJ's determination that the onset date of Boggs' disability was four years after his last mine accident. However, this court has noted that the date at which a disability is set by an

ALJ is to some degree "always arbitrary." *Id.* at 1217. In this case, the date selected as the onset date is not inconsistent with the conclusion that Boggs' disabling back pains were substantially related to his mine accidents.

Evidence establishes that from the date of his 1988 mine accident, Boggs complained of back pain and sought medical assistance from several doctors. He was required to miss several months of work as a result of that mine accident. After finally returning to his mining job, he was terminated because of an inability to complete his workload. As he had done throughout his career, Boggs attempted to work once his back pain subsided. Ultimately, after two automobile accidents and four mine accidents, he was unable to successfully continue to work. According to his pension application, he applied for disability benefits after Dr. Cox informed him that he would never be able to return to work in the coal mines. A disability onset date of October 9, 1992, does not negate the fact that the mine accidents significantly contributed to the back pain that disabled Boggs.

Similar logic applies to Boggs' psychological disability. The ALJ determined that Boggs was disabled, in part, because of dysthymia, anxiety disorder, and mild mental retardation.[5] The Trustees concluded that no causal connection could be found between Boggs' mine accidents and the disability. The court disagrees. The uncontroverted evidence establishes that Boggs began working in the mines at age 19 and remained employed there for over 10 years. His back was injured in four mine accidents over a seven year period. Following each of these mine accidents he complained of pain in his lower back. He was then fired due to his inability to successfully complete his tasks. Thereafter, Boggs reported being depressed for the first time in his life. This depression has been medically linked to his physical problems, on-going pain, and his unemployment. He was subsequently told by his doc-

tor that he would not be able to return to the mines because of his back problems.

The court finds it implausible to conclude that Boggs' psychological disability is the exclusive result of injuries from the car accident which occurred in 1979. Boggs' psychological disability stems from characteristics that are intimately related to his mine accidents.

## VI. CONCLUSION.

To be entitled to a disability pension under the Plan, a claimant is only required to establish that his mine accident was substantially responsible for his disability. Boggs has done so. The medical evidence clearly indicates that the mine accidents caused Boggs acute lower back pain which was one of his disabling injuries. No evidence exists which can show that the low back pain resulting from the mine accidents can be distinguished from the pain linked to the automobile accidents. Similarly, Boggs' psychological disability resulted from his physical problems, pain, and depression from unemployment. The court finds it unreasonable to conclude that the mine accidents were not a substantial cause of this disability. Therefore, the Trustees' determination can not be supported by the record and was an abuse of discretion. As a result, the plaintiff's motion for summary judgment will be granted and the defendant's motion will be denied.

The court will issue an appropriate order.

## ORDER

For the reasons set forth in the Memorandum Opinion entered this day, it is hereby ORDERED and ADJUDGED that the plaintiff's motion for summary judgment is hereby GRANTED, and the defendants' motion for summary judgment is hereby DENIED and this case is stricken from the docket.

---

5. The ALJ also determined that Boggs was disabled because of a compression fracture of the L1 vertebral body. (R. at 109). The court concludes that the Trustees were within their discretion to conclude that this injury was directly caused by Boggs' 1979 automobile accident. The medical evidence connects his car accident with this injury. In fact, no evidence exists that Boggs exacerbated this specific injury in any of his mine accidents.